Joshua Prince, Esquire
Attorney Id. 306521
Civil Rights Defense Firm, P.C.
646 Lenape Road
Bechtelsville, PA 19505
888-202-9297 ext 81114
610-400-8439
Joshua@CivilRightsDefenseFirm.com

UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF
PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| v. | : | No. 5:22-cr-00215-001 |
| | : | |
| REUBEN KING | : | |
| Defendant | : | |

**DEFENDANT REUBEN KING'S BRIEF IN SUPPORT OF
MOTION TO DISMISS INDICTMENT**

### TABLE OF CONTENTS

I.   STATEMENT OF FACTS ........................................................................... 6

II.  STATEMENT OF QUESTIONS INVOLVED ........................................... 6

III. STATUTORY AND REGULATORY LICENSING AND PHOTOGRAPH

REQUIREMENTS..................................................................................... 8

    A. Federal Licensing Requirements.........................................................8
    B. Federal Photograph Requirements ....................................................10
    C. Pennsylvania Photograph Exceptions ..............................................11

IV.  SUMMARY OF ARGUMENT ............................................................... 13

V.   ARGUMENT ......................................................................................... 14

    A. *18 U.S.C. § 923(a) and the violations thereof at §§ 922(a)(1)(A) and
    924(a)(1)(D) Violate the Rule of Lenity and are Void for Vagueness* ...............16
    B. *Requiring Mr. King to Hold a Federal Firearms License to Engage in
    the Business of Dealing in Firearms Violates his Second Amendment
    Rights* ...............................................................................................19
        i. 18 U.S.C. § 923(a) and the violations thereof at §§ 922(a)(1)(A) and
        924(a)(1)(D) are facially unconstitutional..............................................20
        ii. 18 U.S.C. § 923(a) and the violations thereof at §§ 922(a)(1)(A) and
        924(a)(1)(D) are unconstitutional as applied to Mr. King and other
        members of the Amish faith. .............................................................24
    C. *Requiring Mr. King to Hold a Federal Firearms License to Engage in
    the Business of Dealing in Firearms Violates his First Amendment Right
    to the Free Exercise of Religion and the Religious Freedom Restoration
    Act* ...................................................................................................25
        i. Requiring Mr. King to Hold a Federal Firearms License and Submit
        to a Photograph Violates the Religious Freedom Restoration Act of
        1993 ..............................................................................................26
    D. *Requiring Mr. King to Hold a Federal Firearms License and Submit a
    Photograph Violates the Unconstitutional Conditions Doctrine* ......................28

VI.  CONCLUSION...................................................................................... 30

## TABLE OF AUTHORITIES

**Cases**

*Alexis v. State*, 437 Md. 457 (2014).................................................................. 15

*Bd. Of County Com'rs, Wabaunsee County, Kan. V. Umbehr*, 518 U.S. 668 (1996)....... 28

*Columbia Housing & Redevelopment Corp. v. Braden*, 2022 WL 7275671 (Tenn. 2022) .................................................................................................................... 28

*Connally v. Gen. Const. Co.*, 269 U.S. 385 (1926)........................................... 15

*District of Columbia v. Heller*, 554 U.S. 570 (2008)........................... 19, 20, 22

*Employment Div., Dept. of Human Resources of Oregon v. Smith*, 494 U.S. 872 (1990).24

*Ezell v. City of Chicago*, 651 F.3d 684 (7th Cir. 2011) ............................... 19, 20

*Illinois Ass'n of Firearms Retailers*, 961 F. Supp. 2d 928 (N.D. Ill. 2014) .................... 20

*Illinois State Bd. of Elections v. Socialist Workers Party*, 440 U.S. 173 (1979)............. 27

*Koontz v. St. Johns River Water Mgmt.* Dist, 570 U.S. 595 (2013)................................. 28

*Lewis v. United States*, 445 U.S. 55 (1980) ...................................................... 16

*Liparota v. United States*, 471 U.S. 419 (1985)............................................... 15

*Luis v. United States*, 578 U.S. 5 (2016).......................................................... 19

*Malloy v. Hogan*, 378 U.S. 1 (1964)................................................................. 21

*New York State Rifle and Pistol Association v. Bruen*, 142 S.Ct. 2111 (2022). ........ passim

*Perry v. Sindermann*, 408 U.S. 593 (1972)...................................................... 28

*Quaring v. Peterson*, 728 F.2d 1121 (8th Cir. 1984)....................................... 26

*Ramirez v. Collier*, 142 S.Ct. 1264 (2022) ...................................................... 24

*Ramos v. Louisiana*, 140 S.Ct. 1390 (2020) .................................................... 21

*School Dist. of Abington Twp., PA. v. Schempp*, 374 U.S. 203 (1963) ........................... 24

*Sherbert v. Verner*, 374 U.S. 398 (1963) ......................................................... 25

*Sprint Communications Co. v. APCC Servs., Inc.,* 554 U.S. 269 (2008) ........................ 20

*Timbs v. Indiana*, 139 S.Ct. 682 (2019) ............................................................. 21

*U.S. v. Hosford*, 843 F.3d 161 (4th Cir. 2016) .................................................... 22

*United States v. Bass*, 404 U.S. 336 (1971) ....................................................... 16

*United States v. Gradwell*, 243 U.S. 476 (1917) ............................................... 16

*United States v. Hudson*, 7 Cranch 32, 3 L.Ed. 259 (1812) ............................... 15

*United States v. Marzzarella*, 614 F.3d 85 (3d Cir. 2010) .......................... 19, 22

*United States v. Quiroz*, 2022 WL 4352482 (W.D.Tex 2022) ........................... 21

*United States v. Universal C. I. T. Credit Corp.*, 344 U.S. 218 (1952) ............ 16

*Wisconsin v. Yoder*, 406 U.S. 205 (1972) .......................................................... 25

*Yates v. United States*, 135 S.Ct. 1074 (2015) .................................................. 16

**Statutes**

18 Pa.C.S. § 6111 ................................................................................................ 11

18 U.S.C. § 1028 ................................................................................................. 10

18 U.S.C. § 921 ........................................................................................... 8, 9, 18

18 U.S.C. § 921 (2019) .................................................................................. 7, 17

18 U.S.C. § 922 ........................................................................................... passim

18 U.S.C. § 922 (2019) ....................................................................................... 10

18 U.S.C. § 923 ........................................................................................... passim

18 U.S.C. § 924 ........................................................................................... passim

42 U.S.C. § 2000bb ....................................................................................... 24, 25

42 U.S.C. § 2000bb-1 .......................................................................................... 25

**Other Authorities**

Cass R. Sunstein, Nondelegation Canons, 67 U. Chi. L. Rev. 315 (2000). ....... 16

**Regulations**

27 C.F.R. 478.44 ................................................................................................ 10, 15, 23

37 Pa.Code § 33.102 ..................................................................................................... 11

67 Pa.Code § 73.3 ..................................................................................................... 5, 10

**Constitutional Provisions**

First Amendment to the U.S. Constitution ..................................................... 24

Second Amendment to the U.S. Constitution ............................................... 18

## I.      STATEMENT OF FACTS

In January 2016, the Bureau of Alcohol, Tobacco, Firearms, and Explosives ("ATF") issued ATF Publication 5310.2, "Do I Need a License to Buy and Sell Firearms? Guidance to help you understand when a Federal Firearms License is required under federal law," in which the agency reviewed the "Legal Framework" concerning the requirements to hold a federal firearms license, and declared therein that "there is no specific threshold number or frequency of sales, quantity of firearms, or amount of profit or time invested that triggers the licensure requirement."[1] On or about January 12, 2022, agents from the Bureau of Alcohol, Tobacco, Firearms, and Explosives executed a search warrant at the property where the Defendant, Mr. Reuben King, a practicing and observant member of the Amish faith[2], resides.[3] Several hundred firearms were removed during the search.[4] On June 28, 2022, Mr. King was indicted on one count of engaging in the business of dealing in firearms without a license in violation of the *former* versions of 18 U.S.C. §§ 922(a)(1)(A) and 924(a)(1)(D).[5]

## II.     STATEMENT OF QUESTIONS INVOLVED

---

[1] *See*, Appendix A, p. 4, Do I Need A License to Buy and Sell Firearms?, Publication 5310.2, January 2016.

[2] Appendix B is Mr. King's Valid-Without-Photo Driver's License issued by the Commonwealth of Pennsylvania. In order to obtain the license, Mr. King demonstrated that the taking of a photograph would violate the tenets of his religious beliefs. 67 Pa.Code § 73.3(d)(4).

[3] https://www.gunsamerica.com/digest/atf-raids-home-of-amish-man-in-pennsylvania-who-admits-to-selling-firearms

[4] *See*, ECF Doc # 1.

[5] *Id*.

1.  Whether the indictment of Mr. King for violation of the former versions of 18

    U.S.C. §§ 922(a)(1)(A) and 924(a)(1)(D) is void for vagueness and violative

    of the Rule of Lenity?

      **Suggested Answer** in the *Affirmative*

2.  Whether the indictment of Mr. King for violation of the former versions of 18

    U.S.C. §§ 922(a)(1)(A) and 924(a)(1)(D) is an unconstitutional violation of

    his Second Amendment rights?

      **Suggested Answer** in the *Affirmative*

3.  Whether indictment of Mr. King is an unconstitutional violation of his First

    Amendment rights and the Religious Freedom Restoration Act of 1993?

      **Suggested Answer** in the *Affirmative*

4.  Whether indictment of Mr. King is based upon an unconstitutional condition

    coercing the forfeit of either his First Amendment or Second Amendment

    rights?

      **Suggested Answer** in the *Affirmative*

III.    **STATUTORY AND REGULATORY LICENSING AND PHOTOGRAPH REQUIREMENTS**

A.    Federal Licensing Requirements

The Gun Control Act of 1968, in its amended form, is the current source of licensing requirements for those who wish to engage in the business of dealing in firearms in the U.S. as well as the violations and penalties associated with violation of those licensing requirements. 18 U.S.C. § 922(a)(1)(A) states that "[i]t shall be unlawful for any person except a licensed importer, licensed manufacturer, or licensed dealer to engage in the business of importing, manufacturing, or dealing in firearms, or in the course of such business to ship, transport, or receive any firearm in interstate or foreign commerce." At the time the conduct is alleged to have occurred in this matter, the term "engaged in the business" was defined

> [A]s applied to a dealer in firearms... a person who devotes time, attention, and labor to dealing in firearms as a regular course of trade or business with the principal objective of livelihood and profit through the repetitive purchase and resale of firearms, but such term shall not include a person who makes occasional sales, exchanges, or purchases of firearms for the enhancement of a personal collection or for a hobby, or who sells all or part of his personal collection of firearms.

18 U.S.C. § 921(a)(21)(C) (2019). The term "with the principal objective of livelihood and profit" was defined in pertinent part to mean

> that the intent underlying the sale or disposition of firearms is predominantly one of obtaining livelihood and pecuniary gain, as opposed to other intents, such as improving or liquidating a personal firearms collection: *Provided,* That proof of profit shall not be required as to a person who engages in the regular and repetitive purchase and disposition of firearms for criminal purposes or terrorism.

18 U.S.C. § 921(a)(22) (2019).

In 2016, recognizing the ambiguity within this definition, the Bureau of Alcohol, Tobacco, Firearms, and Explosives even published a guidance document stating, "Federal law does not establish a 'bright-line' rule for when a federal firearms license is required. As a result, there is no specific threshold number or frequency of sales, quantity of firearms, or amount of profit or time invested that triggers the licensure requirement." [6]

Thereafter, Congress became aware of ATF's concern over the ambiguity and on June 24, 2022, after the time the conduct is alleged to have occurred in this matter, amended the Gun Control Act by passage of the Bipartisan Safer Communities Act. Pursuant to the amendments, Congress changed the definitions of "engaged in the business" and "within the principal objective of livelihood and profit" and added and defined the new term "to predominantly earn a profit." Now, engaged in the business means,

> [A]s applied to a dealer in firearms, as defined in section 921(a)(11)(A), a person who devotes time, attention, and labor to dealing in firearms as a regular course of trade or business to predominantly earn a profit through the repetitive purchase and resale of firearms, but such term shall not include a person who makes occasional sales, exchanges, or purchases of firearms for the enhancement of a personal collection or for a hobby, or who sells all or part of his personal collection of firearms.

18 U.S.C. § 921(a)(21)(C). The definition of "with the principal objective of livelihood and profit" is amended to read, in relevant part,

> [T]hat the intent underlying the sale or disposition of firearms is predominantly one of obtaining livelihood and pecuniary gain, as opposed to other intents, such as improving or liquidating a personal firearms collection: *Provided,* That proof of profit shall not be required as to a

---

[6] *See*, Appendix A, <u>Do I Need A License to Buy and Sell Firearms?,</u> Publication 5310.2, January 2016.

person who engages in the regular and repetitive purchase and disposition of firearms for criminal purposes or terrorism.

18 U.S.C. § 921(a)(23). Finally, the term "to predominantly earn a profit" was

added and defined to mean,

> [T]hat the intent underlying the sale or disposition of firearms is predominantly one of obtaining pecuniary gain, as opposed to other intents, such as improving or liquidating a personal firearms collection: *Provided*, That proof of profit shall not be required as to a person who engages in the regular and repetitive purchase and disposition of firearms for criminal purposes or terrorism.

18 U.S.C. § 921(a)(22) [7]

Section 923, Licensing, which is unchanged, specifies in pertinent part

that,

> No person shall *engage in the business* of importing, manufacturing, or dealing in firearms, or importing or manufacturing ammunition, until he has filed an application with and received a license to do so from the Attorney General. The application shall be in such form and contain only that information necessary to determine eligibility for licensing as the Attorney General shall by regulation prescribe and *shall include a photograph* and fingerprints of the applicant...

18 U.S.C. § 923(a)(emphasis added). Finally, section 924(a)(1)(D) contains the penalty

for violation and states that a whoever "willfully violates any other provision of this

chapter, shall be fined under this title, imprisoned not more than five years, or both."

B.    Federal Photograph Requirements

As quoted *supra*, section 923(a) requires an application for a federal firearms

license to include a photograph of the applicant. Accordingly, ATF's implementing

regulations require any person who intends to engage in the business as a firearms dealer,

---

[7] Although there still appears to be ambiguity in the new definitions, such is irrelevant to the matter before this Court, as the Government does not contend that Mr. King has engaged in such conduct since the amended definitions went into effect.

to file an application which must "[i]nclude a photograph and fingerprints as required in the instructions on the form." 27 C.F.R. 478.44(a)(1)(ii). Licensed dealers are then required, prior to transferring a firearm to an individual without a federal firearms license, to verify the "identity of the transferee by examining a valid identification documents (as defined in section 1028(d) of this title) of the transferee containing a photograph of the transferee." 18 U.S.C. § 922(t)(1)(C) (2019). Importantly, section 1028 addressing, *fraud and related activity in connection with identification documents, authentication features, and information*, defines an identification document as:

> A document made or issued by or under the authority of the United States Government, a State, political subdivision of a State, a sponsoring entity of an event designated as a special event of national significance, a foreign government, political subdivision of a foreign government, an international governmental or an international quasi-governmental organization which, when completed with information concerning a particular individual, is of a type intended or commonly accepted for the purpose of identification of individuals.

18 U.S.C. § 1028(d)(3). Notably, an identification document does not inherently require a photograph; rather, it is section 922 that imposes the additional requirement that the identification document contain a photograph.

## C.     Pennsylvania Photograph Exceptions

Pennsylvania law recognizes the religious objections that some faiths raise to photographs and provides a mechanism for them to obtain identification that is valid without a photograph. "The Department [of Transportation], may [] allow a person to apply for a valid-without-photo driver's license in lieu of a photographic driver's license upon certification that having a photograph taken would violate the tenets of the holder's religion or religious beliefs." 67 Pa.Code § 73.3(d)(4).

Similar to the requirements of section 922, 18 Pa.C.S. § 6111(b)(2) requires that prior to a licensed firearms dealer selling or delivering a firearm to another person he must have "[i]nspected photoidentification of the potential purchaser or transferee, including, but not limited to, a driver's license, official Pennsylvania photoidentification card or official government photoidentification card." However, distinct from the requirements of section 922, section 6111(b)(2) continues, "*[i]n the case of a potential buyer or transferee who is a member of a recognized religious sect or community whose tenets forbid or discourage the taking of photographs of members of that sect or community, a seller shall accept a valid-without-photo driver's license or a combination of documents, as prescribed by the Pennsylvania State Police, containing the applicant's name, address, date of birth and the signature of the applicant.*" (emphasis added). The implementing regulations of section 6111 accordingly provide in relevant part that,

> If the applicant is a member of a religious sect or community whose tenets forbid or discourage the taking of photographs, dealers shall accept a valid without-photo driver's license, or a combination of three of the following types of identification. If none of those three contain the applicant's current address, the applicant shall have another document containing the name and current address such as a current utility bill, residential lease agreement, mortgage, and the like.
>> (A) A valid government-issued identification card.
>> (B) A birth certificate.
>> (C) A Social Security card.
>> (D) A valid Pennsylvania license to carry firearms issued under section 6109 of the act (relating to licenses). To be accepted as a valid Pennsylvania license to carry firearms, a license issued after July 1, 1998, shall be on a form identical to the one prescribed by the State Police.

37 Pa.Code § 33.102. Although rendered inoperable by the portions of federal law discussed *supra*, Pennsylvania not only understands and respects the constitutional protections offered to members of religious communities that object to the taking of

photographs, but also, as further discussed *infra*, acknowledges that there is a government-sanctioned mechanism or way for one to prove identity, in the absence of photo identification.

IV.     SUMMARY OF ARGUMENT

Mr. King has been indicted in this matter on one count for engaging in the business of dealing in firearms without a federal firearms license in violation of 18 U.S.C. §§ 922(a)(1)(A) and 924(a)(1)(D). For the reasons discuss in more detail *infra*, the Indictment must be dismissed. First, the provisions of the Gun Control Act that Mr. King is alleged to have violated, are void for vagueness and violate of the rule of lenity. It is well established that the law must be sufficiently clear, such that a man of common intelligence, can clearly identify the prohibited conduct. As the statutes fail to present a clear definition of what constitutes "engaging in the business" and have since been amended in an attempt to clarify the definition, as well as ATF having clearly maintained since at least 2016 that there "is no bright-line rule for when a federal firearms license is required," neither Mr. King, nor any other person of common intelligence, could know what conduct was prohibited by sections 922(a)(1)(A) and 924(a)(1)(D).

Second, even if this Court determines that the statues are not void for vagueness and the Indictment does not violate the rule of lenity, this Court must find that the requirement of Mr. King to obtain a federal firearms license violates his Second Amendment right to engage in the commercial purchase and sale of firearms. The U.S Supreme Court recently held in *NYSRPA v. Bruen*, that any law impinging on conduct protected by the Second Amendment must be consistent with this Nation's historical tradition of firearms regulation. Regulating the commercial sale of firearms is an advent

of the 20th-century, well after the ratification of the Second Amendment and beyond the relevant time period for identification of historical analogs to the regulation. As such, Sections 922(a)(1)(A) and 924(a)(1)(D) are unconstitutional facially, or, alternatively, as-applied to Mr. King.

Third, Mr. King, as an observant and practicing member of the Amish faith, is precluded from willingly submitting to a photograph, and as a result is ineligible to obtain a federal firearms license. Even if, *arguendo*, Mr. King's conduct did require a federal firearms license, the requirement that he submit to a photograph in order to obtain the license, violates his First Amendment right to the free exercise of religion and the Religious Freedom Restoration Act of 1993. The government is unable to advance any compelling interest in requiring a photograph of a federal firearms license applicants and is not able to contend that a photograph is the least restrictive means of advancing that interest.

Finally, the government is precluded from coercing Mr. King from surrendering his First Amendment right to the free exercise of religion, by compelling him to submit to a photograph, in order to secure the right to exercise his Second Amendment right to engage in the commercial sale of firearms. The government's creation of this *Hobson's choice* is prohibited by the unconstitutional conditions doctrine. As a result of the foregoing, explained in great detail *infra*, the Indictment of Mr. King must be dismissed with prejudice.

## V.    ARGUMENT

Mr. Reuben King has been accused of engaging in the business of dealing in firearms without being licensed to do so and indicted on one count for violations of the

prior versions of 18 U.S.C. §§ 922(a)(1)(A) and 924(a)(1)(D). Although Mr. King makes no admissions as to his conduct, even if, *arguendo*, he previously engaged in the conduct the government alleges, he cannot be convicted on the indicted offense as a matter of law, and the indictment should be dismissed, first and foremost, because at the time of his alleged conduct, the U.S Congress failed to clearly define the conduct which it wished to criminalize, a problem compounded by the ATF's publications emphasizing the lack of any bright-line rules [8] and later recognized by the Congress amending the applicable definitions due to their vagueness.

Second, as an observant member of the Amish faith, as already acknowledged by the Commonwealth of Pennsylvania, [9] Mr. King is prohibited from posing for photographs and as a result, is unable to obtain a Federal Firearms License (FFL). [10] 18 U.S.C. § 923(a) and its implementing regulations provide that an application for an FFL shall be in "such form and contain only that information necessary to determine eligibility for licensing as the Attorney General shall by regulation prescribe and shall include a photograph and fingerprints of the applicant." This requirement presents Mr.

---

[8] *See*, Appendix A, <u>Do I Need A License to Buy and Sell Firearms?,</u> Publication 5310.2, January 2016 (declaring, "Federal law does not establish a 'bright-line' rule for when a federal firearms license is required. As a result, there is no specific threshold number or frequency of sales, quantity of firearms, or amount of profit or time invested that triggers the licensure requirement.")

[9] *See*, Appendix B, a copy of Mr. King's Valid-Without-Photo identification card issued by the Commonwealth of Pennsylvania, pursuant to 67 Pa.Code 73.3(d)(4), which can only be issued to those who are determined by the Commonwealth to be members of a religious sect or community whose tenets forbid or discourage the taking of photographs.

[10] This belief stems from the Biblical passage Exodus 20:4, which mandates that "You shall not make unto thee any graven image, or any likeness of anything that is in heaven above, or that is in the earth beneath, or that is in the water under the earth," as well as the Christian belief in humility. As explained on the Discover Lancaster website, the "Amish hold humility as a highly-cherished value and view pride as a threat to community harmony," *available at*, http://www.discoverlancaster.com/towns-and-heritage/amish-country/amish-and-photographs.asp.

King with a *Hobson's choice*, between *betraying his faith* and *foregoing his constitutional right to buy and sell firearms*. As a result, section 923(a) and necessarily sections 922(a)(1)(A), (t)(1)(C), and 924(a)(1)(D), as well as, 27 C.F.R. § 478.44(a)(1)(ii), are unconstitutional facially and as-applied to Mr. King and other members of the Amish faith, as violative of the First and Second Amendments to the U.S. Constitution, and violative of the Religious Freedom Restoration Act of 1993, and as a result, the instant indictment must be dismissed.

      A.      *18 U.S.C. § 923(a) and the violations thereof at §§ 922(a)(1)(A) and 924(a)(1)(D) Violate the Rule of Lenity and are Void for Vagueness*

Where a statute is ambiguous, the rule of lenity precludes any deference being afforded to an administrative agency and requires the narrowest interpretation. The "principle of legality," the "first principle" or otherwise known as the *nulla poena sine lege* of criminal law, requires that criminal laws be explicitly and unambiguously specified in advance by statute. *Liparota v. United States*, 471 U.S. 419, 424 (1985)(declaring that "[t]he definition of the elements of a criminal offense is entrusted to the legislature, particularly in the case of federal crimes, which are solely creatures of statute," citing to *United States v. Hudson*, 7 Cranch 32, 3 L.Ed. 259 (1812)). While "a statute which either forbids or requires the doing of an act in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application violates the first essential of due process of law" (*Connally v. Gen. Const. Co.*, 269 U.S. 385, 391 (1926)), the rule of lenity – a compliment to the vagueness doctrine – "is a common law doctrine that directs courts to construe ambiguous criminal statutes in favor of criminal defendants. *Alexis v. State*, 437 Md. 457, 484-85 (2014).

In this vein, Justice Frankfurter writing for the Court wrote: "[W]hen choice has to be made between two readings of what conduct Congress has made a crime, it is appropriate, before we choose the harsher alternative, to require that Congress should have spoken in language that is clear and definite." *United States v. Universal C. I. T. Credit Corp.*, 344 U.S. 218, 221–22 (1952). Similarly, the Court has declared that "before a man can be punished as a criminal under the federal law his case must be 'plainly and unmistakably' within the provisions of some statute." *United States v. Gradwell*, 243 U.S. 476, 485 (1917). [11] More recently, the Court has declared that any "ambiguity concerning the ambit of criminal statutes should be resolved in favor of lenity." *Yates v. United States*, 135 S.Ct. 1074, 1088 (2015) (internal citation omitted).

As held by the U.S. Supreme Court, "the touchstone" of the lenity principle "is statutory ambiguity." *Lewis v. United States*, 445 U.S. 55, 65 (1980). As Professor Sunstein has explained:

> One function of the lenity principle is to ensure against delegations. Criminal law must be a product of a clear judgment on Congress's part. Where no clear judgment has been made, the statute will not apply merely because it is plausibly interpreted, by courts or enforcement authorities, to fit the case at hand. The rule of lenity is inspired by the due process constraint on conviction pursuant to open-ended or vague statutes. While it is not itself a constitutional mandate, it is rooted in a constitutional principle, and serves as a time-honored nondelegation canon.

Cass R. Sunstein, Nondelegation Canons, 67 U. Chi. L. Rev. 315, 332 (2000).

---

[11] *See also*, *United States v. Bass*, 404 U.S. 336, 348 (1971) (declaring "First, a fair warning should be given to the world in language that the common world will understand, of what the law intends to do if a certain line is passed. To make the warning fair, so far as possible the line should be clear. Second, because of the seriousness of criminal penalties, and because criminal punishment usually represents the moral condemnation of the community, legislatures and not courts should define criminal activity … Thus, where there is ambiguity in a criminal statute, doubts are resolved in favor of the defendant.)(internal citations omitted).

Here, the Government alleges that Mr. King "willfully engaged in this business of dealing in firearms without being licensed to do so under the provisions of Chapter 44, Title 18, United States Code." Indictment, (ECF Doc. No.1). At the time the conduct is alleged to have occurred, from on or about October 24, 2019 through on or about January 12, 2022, 18 U.S.C. § 921(a)(21)(C) defined the term "engaged in the business," in relevant part,

> [A]s applied to a dealer in firearms, as defined in section 921(a)(11)(A), a person who devotes time, attention, and labor to dealing in firearms as a regular course of trade or business *with the principal objective of livelihood and profit* through the repetitive purchase and resale of firearms, *but such term shall not include a person who makes occasional sales, exchanges, or purchases of firearms for the enhancement of a personal collection or for a hobby, or who sells all or part of his personal collection of firearms.* (emphasis added).

The Bureau of Alcohol, Tobacco, Firearms, and Explosives (ATF) published several guidance documents over the years attempting to clarify this ambiguous standard, but has never identified a bright-line rule and instead, has merely recognized and amplified the ambiguity. [12]  Aware of the vagueness problem, the U.S. Congress amended the definition of engaged in the business through the Bipartisan Safer Communities Act in 2022, which now states,

> [A]s applied to a dealer in firearms, as defined in section 921(a)(11)(A), a person who devotes time, attention, and labor to dealing in firearms as a regular course of trade or business to *predominantly earn a profit* through the repetitive purchase and resale of firearms, *but such term shall not include a person who makes occasional sales, exchanges, or purchases of firearms for the enhancement of a personal collection or for a hobby, or who sells all or part of his personal collection of firearms.*

---

[12] *See*, Appendix A and fn. 1 *supra* ("Federal law does not establish a 'bright-line' rule for when a federal firearms license is required. As a result, there is no specific threshold number or frequency of sales, quantity of firearms, or amount of profit or time invested that triggers the licensure requirement.")

18 U.S.C. § 921(a)(21)(C)(emphasis added). Congress further defined "to predominantly earn a profit"

> [M]eans that the intent underlying the sale or disposition of firearms is predominantly one of obtaining pecuniary gain, as opposed to other intents, such as improving or liquidating a personal firearms collection: *Provided*, That proof of profit shall not be required as to a person who engages in the regular and repetitive purchase and disposition of firearms for criminal purposes or terrorism...

18 U.S.C. §921(a)(22) (excluding definitions of terrorism). These changes make clear that the previous definition, under which Mr. King has been indicted, was impermissibly vague, requiring Mr. King, a man of common intelligence, to guess at its meaning. As such, this Court should dismiss the indictment as violative of the rule of lenity and on the basis that the charged offense is void for vagueness. [13]

> B.     *Requiring Mr. King to Hold a Federal Firearms License to Engage in the Business of Dealing in Firearms Violates his Second Amendment Rights*

*A well regulated Militia, being necessary to the security of a free state, the right of the people to keep and bear Arms, shall not be infringed.*

U.S. Const., 2nd Amend. The United States Supreme Court recently had occasion to review protection offered by the Second Amendment to the Constitution and held that

> [W]hen the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct. To justify its regulation, the government may not simply posit that the regulation promoted an important interest. Rather, the government must demonstrate that the regulation is consistent with this Nation's historical tradition of firearm regulation. Only if a firearm regulation is consistent with the Nation's historical tradition may a court conclude that the individual's conduct falls outside the Second Amendment's "unqualified command."

*New York State Rifle and Pistol Association v. Bruen*, 142 S.Ct. 2111, 2126

(2022). The first step of the *Bruen* test outlined above is determining whether the plain

---

[13] Obviously, such a ruling by this Court would have no impact on the current law, including the definition of "engaged in the business" or "to predominantly earn a profit."

text of the Second Amendment protects the conduct at issue. *Id*. An inescapable pre-condition of keeping and bearing arms is purchasing those arms, making the implicit right to buy and sell firearms a necessary complement protected by the plain text of the Second Amendment. *See Ezell v. City of Chicago*, 651 F.3d 684, 704 (7th Cir. 2011)("The right to possess firearms for protection implies a corresponding right to acquire and maintain proficiency in their use; the core right wouldn't mean much without the training and practice that make it effective."); *see also*, *Luis v. United States*, 578 U.S. 5, 26 (2016)(Thomas, J., concurring, "[c]onstitutional rights thus implicitly protect those closely related acts necessary to their exercise."). It can hardly be argued that the dealing, or purchase and sale, of firearms falls outside the ambit of the Second Amendment and it is well recognized that the commercial sale of firearms is an activity protected by the Second Amendment. *See District of Columbia v. Heller*, 554 U.S. 570, 626-27 (2008); *see also United States v. Marzzarella*, 614 F.3d 85, 92 fn. 8, (3d Cir. 2010)(holding that under *Heller*, a law or regulation would be unconstitutional if it barred the commercial purchase or sale of firearms, as it would foreclose the right to keep and bear arms).

> i.    **18 U.S.C. § 923(a) and the violations thereof at §§ 922(a)(1)(A) and 924(a)(1)(D) are facially unconstitutional.**

As the commercial purchase and sale of firearms is conduct protected by the Second Amendment, we proceed to the second step of the *Bruen* test, requiring the government to justify the regulation. To succeed, the government "must demonstrate that the regulation is consistent with this Nation's historical *tradition* of firearm regulation" and while it does not need to be a "historical twin," the tradition of a state, [14] around the

---

[14] *See,* Bruen, 142 S. Ct. at 2154-55 (finding the statutes of territories deserving of "little weight" because they were "localized," and "rarely subject to judicial scrutiny").

time of Founding, must, at a minimum, be a historical analogue. *Bruen*, 142 S.Ct. at

2126, 2133 (2022)(emphasis added). But a single historical analogue around the time of

Founding of a state is not a tradition; rather, it is a mere aberration or anomaly, with no

followers. [15] Even two or three historical analogues of the states around the time of

Founding are at best a trend and not a tradition,[16] especially when short-lived.[17]

  In addressing what constitutes the Nation's historical tradition of firearm

regulation, *Bruen* explains that "when it comes to interpreting the Constitution, not all

history is created equal." *Id*. at 2136. That is why courts "must . . . guard against giving

postenactment history more weight than it can rightly bear." *Id.* "As [the Court]

recognized in *Heller* itself, because post-Civil War discussions of the right to keep and

bear arms came '75 years after the ratification of the Second Amendment, they do not

provide as much insight into its original meaning as earlier sources.'" *Id.* at 2137 (quoting

*Heller*, 554 U.S. at 614); *see also Sprint Communications Co. v. APCC Servs., Inc.,* 554

U.S. 269, 312 (2008)(Roberts, C.J., dissenting) ("The belated innovations of the mid- to

late-19th-century courts come too late to provide insight into the meaning of [the

Constitution in 1787]"). In fact, "post-ratification adoption or acceptance of laws that are

inconsistent with the original meaning of the constitutional text obviously cannot

---

[15] *See, D.C. v. Heller*, 554 U.S. 570, 632 (2008) ("[W]e would not stake our interpretation of the Second Amendment upon a single law ... that contradicts the overwhelming weight of other evidence.")

[16] *See, Ezell*, 651 F.3d at 706 (finding that two historical statutes "falls far short of establishing that [a regulated activity] is wholly outside the Second Amendment as it was understood" in 1791); *Illinois Ass'n of Firearms Retailers*, 961 F. Supp. 2d 928, 937 (N.D. Ill. 2014) ("[C]itation to a few isolated statutes—even to those from the appropriate time period—fall[s] far short of establishing that gun sales and transfers were historically unprotected by the Second Amendment") (internal quotation marks omitted).

[17] *See, Bruen*, 142 S. Ct. at 2155 ("[T]hese territorial restrictions deserve little weight because they were . . . short lived.")

overcome or alter that text." *Bruen*, 142 S. Ct. at 2137 (quoting *Heller v. District of Columbia*, 670 F.3d 1244, 1274, n. 6 (D.C. Cir. 2011) (Kavanaugh, J., dissenting)).

   *Bruen* thus establishes that this Court must prioritize Founding era evidence, while evidence from around the "mid- to late- 19th century" is at most "secondary." *Id.* [18] at 2137. "19th-century evidence [is] treated as mere confirmation of what the Court thought had *already been established*" in the Founding era. *Id.* (emphasis added). This makes sense because the "individual rights enumerated in the Bill of Rights and made applicable against the States through the Fourteenth Amendment *have the same scope* as against the Federal Government." *Id.* (citing *Ramos v. Louisiana*, 140 S.Ct. 1390, 1397 (2020); *Timbs v. Indiana*, 139 S.Ct. 682, 686–687 (2019); *Malloy v. Hogan*, 378 U.S. 1, 10–11 (1964)). And regardless of any other debate, there is no dispute that 1791 is when the Bill of Rights limited the Federal Government. Thus, in order to ensure uniformity of incorporated rights with respect to the Federal Government and the States, 1791 is the relevant time to "peg[] . . . the public understanding of the right." *Bruen*, 142 S. Ct. at 2137; *see also McDonald v. City of Chicago*, 561 U.S. 742, 765 (2010) (noting the Court's "decisive[]" holding "that incorporated Bill of Rights protections 'are all to be enforced against the States . . . according to the same standards that protect those personal rights against federal encroachment'" (quoting *Malloy*, 378 U.S. at 10)). [19]

   In this matter, the Government is unable to establish its burden, as there are no historical analogues around the time of Founding or even through the 1800s or early

---

[18] *See generally*, *United States v. Quiroz*, 2022 WL 4352482 (W.D.Tex 2022)(dismissing indictment under 18 USC § 922(n) as inconsistent with this Nation's historical tradition).
[19] As the extensive historical analysis of the Reconstruction period in *McDonald* shows, the evidence around Reconstruction is most relevant to determining *whether* a right has been incorporated, 561 U.S. at 777, while the content of that right is the public understanding in 1791.

1900s. [20] It was not until 1938 – or 147 years after ratification of the Second Amendment [21] – with the passage of the Federal Firearm Act that dealers in firearms became subject to a licensing requirement. [22] The Gun Control Act of 1968 would later supersede the Federal Firearms Act and, subject to numerous amendments, is currently what still governs FFL licensing today. As discussed *supra*, the *Bruen* and *Heller* Courts assigned virtually no value to laws advanced by the government from the mid to late-19th-century that were not based on previously established laws. *See*, *Bruen* at 2154; *See*, *Heller* at 614.

Additionally, the current form of section 923 requires that an application for a federal firearms license include a photograph of the applicant. This requirement was not added until 1995 by section 110301 of the Violent Crime Control and Law Enforcement Act of 1994, Pub.L. 103-322 (1994), and there is no historical analog for such a statutory requirement, as citizens have always been able to prove their identity through documentary evidence, and still do to this day. [23] Perhaps more disconcerting is the fact

---

[20] Although several Circuit Courts of Appeals have reviewed the constitutionality of the FFL licensing scheme at issue here, reaching the conclusion that the regulations were constitutionally permissible, none have done so since the Supreme Court's decision in *Bruen* under the text and history test. *See generally*, *U.S. v. Marzarella*, 614 F.3d 85 (3d. Cir 2010);  *U.S. v. Hosford*, 843 F.3d 161 (4th Cir. 2016).

[21] At least four generations would have come and gone, before the Federal Firearms Act was enacted. *See*, https://longevity.technology/news/usa-embrace-longevity-or-grow-old-fast (declaring that "[a]t the time of America's founding in 1776, the average newly-minted American citizen could expect to live to the ripe old age of 35…")

[22] The Fourth Circuit Court of Appeals in *U.S. v. Hosford* was only able to identify two states which had earlier regulations on firearms dealers, Hawaii (1927) and the District of Columbia (1932). 843 F.3d 161, 167 n. 1 (4th Cir. 2016).

[23] The absolute nature of this requirement is extremely troubling when one considers the fact that no one is born with photo identification and everyone, inclusive of the state and federal governments, accepts that there is a way, in the absence of photo identification, to prove identity, as otherwise, no one would ever be able to obtain photo identification.

that the purchase of a firearm is the only constitutionally regulated activity to require

photo identification.

Here, there is no national historical tradition of the regulation of the commercial

sale of firearms present until the 1930's, *i.e. the 20th century*. In the absence of any such

national historical tradition, § 923(a) and the violations thereof at § 922(a)(1)(A) and

924(a)(1)(D) are facially unconstitutional as violative of the Second Amendment.

> **ii.     18 U.S.C. § 923(a) and the violations thereof at §§ 922(a)(1)(A) and 924(a)(1)(D) are unconstitutional as applied to Mr. King and other members of the Amish faith.**

In the alternative, even if, *arguendo*, the Court determines that 18 U.S.C. §

923(a), and §§ 922(a)(1)(A), (t)(1)(C), and 924(a)(1)(D), as well as, 27 C.F.R. §

478.44(a)(1)(ii), are facially constitutional, this Court should find them unconstitutional

as-applied to Mr. King and other members of the Amish faith. As mentioned briefly

*supra*, section 923 requires applications for a federal firearms license to submit a

photograph with their application. Applicants who do not include a photograph, are not

eligible for and will not be issued an FFL. As discussed in greater detail *infra*, prohibiting

Mr. King and other members of the Amish faith from the ability to engage in the

commercial sale of firearms, as a result of the exercise of their bonafide closely-held

religious beliefs, [24]  *i.e.* refusing to pose for a photograph, is an unconstitutional condition

which violates their First and Second Amendment rights as well as the Religious

Freedom Restoration Act of 1993.

---

[24] *See,* fn.10 *supra*.

C.   *Requiring Mr. King to Hold a Federal Firearms License to Engage in the Business of Dealing in Firearms Violates his First Amendment Right to the Free Exercise of Religion and the Religious Freedom Restoration Act*

*Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; or abridging the freedom of speech, or of the press; or the right of the people peaceably to assemble, and to petition the Government for a redress of grievances.*

US. Const., First Amend. The Free Exercise Clause of the First Amendment to the United States Constitution "recognizes the value of religious training, teaching and observance and, more particularly, the right of every person to freely choose his own course with reference thereto, free of any compulsion from the state. This the Free Exercise Clause guarantees." *School Dist. of Abington Twp., PA. v. Schempp*, 374 U.S. 203, 222 (1963). The U.S. Supreme Court in *Schempp* continued,

> The Free Exercise Clause, likewise considered many times here, withdraws from legislative power, state and federal, the exertion of any restraint on the free exercise of religion. Its purpose is to secure religious liberty in the individual by prohibiting any invasions thereof by civil authority. Hence it is necessary in a free exercise case for one to show the coercive effect of the enactment as it operates against him in the practice of his religion.

*Id*. at 222-23. After a series of U.S. Supreme Court decisions finding that generally, the First Amendment would offer no protection from neutral laws of general applicability on the ground that the law proscribes conduct his religion prescribes [25], the Congress enacted the Religious Freedom Restoration Act of 1993 (RFRA). [26, 27]

As discussed *supra*, Mr. King stands accused of engaging in the business of dealing in firearms without a license. In order to obtain a federal firearms license, Mr.

---

[25] *Employment Div., Dept. of Human Resources of Oregon v. Smith*, 494 U.S. 872, 879 (1990).
[26] 42 U.S.C. § 2000bb *et. seq*.
[27] *Ramirez v. Collier*, 142 S.Ct. 1264, 1277 (2022).

King would be required by 18 U.S.C. § 923(a) to betray his religious beliefs and submit

to a photograph. This requirement violates Mr. King's Free Exercise of religion, the

RFRA, and creates an unconstitutional condition.

>    i.    **Requiring Mr. King to Hold a Federal Firearms License and Submit to a Photograph Violates the Religious Freedom Restoration Act of 1993**

In enacting the RFRA in 1993, the Congress declared, "laws neutral toward

religion may burden religious exercise as surely as laws intended to interfere with

religious exercise," and continued "[t]he purposes of this chapter are - - (1) to restore the

compelling interest test as set forth in *Sherbert v. Verner*, 374 U.S. 398 (1963) and

*Wisconsin v. Yoder*, 406 U.S. 205 (1972) and to guarantee its application in all cases

where free exercise of religion is substantially burdened; and (2) to provide a claim or

defense to persons whose religious exercise is substantially burdened by the

government." 42 U.S.C. § 2000bb.

Pursuant to § 2000bb-1, the Government

> [S]hall not substantially burden a person's exercise of religion even if the burden results from a rule of general applicability, except...if it demonstrates that application of the burden to the person- - (1) is in furtherance of a compelling government interest; and (2) is the least restrictive means of furthering that compelling governmental interest... A person whose religious exercise has been burdened in violation of this section may assert that violation as a claim or defense in a judicial proceeding and obtain appropriate relief against a government.

Here, section 923(a) is a law one of general applicability with no apparent

discriminatory intent. The first question presented by § 20000bb-1 is whether the

requirement that Mr. King submit a photograph in order to obtain an FFL, substantially

burdens his exercise of religion. It does. [28] Next, is the burden in furtherance of a

compelling government interest? No. While Mr. King can only speculate as to what the

Government may advance as its interest in requiring federal firearms license applicants to

submit a photograph, he does not see how it could be a *compelling* interest, especially

given that issuance of a federal firearms license is preceded by an interview of the

applicant, by the ATF at the business premises. [29] Moreover, as discussed *supra*, [30] no

one is born with a photo-identification and all forms of government acknowledge and

accept that there are ways of establishing identity in the absence of photo-identification;

and indeed, to obtain photo-identification. For example, a resident of Pennsylvania

cannot obtain a photo ID until reaching the age of ten. [31] Upon reaching the age of ten,

there are ten types of documents that can be combined to prove identity, and six of those

do not contain a photograph. [32] [33]

       Finally, even if *arguendo*, this Court determines the Government's interest is

compelling, requiring all applicants to submit a photograph is not the least restrictive

means of furthering that interest. Government's around the world have for hundreds, if

not thousands of years, been identifying their citizens and subjects without photographic

evidence. Currently, according to USAGov, a division of the U.S. General Services

---

[28] *See*, *Quaring v. Peterson*, 728 F.2d 1121 (8th Cir. 1984) (striking down the requirement of a photograph for issuance of a driver's license).
[29] https://www.atf.gov/firearms/apply-license
[30] *See*, fn. 24, *supra*.
[31] https://www.dmv.pa.gov/Driver-Services/Photo-ID2/Pages/Get%20An%20ID.aspx
[32] Pennsylvania Department of Transportation, PUB195US (7-18), http://www.dot.state.pa.us/Public/DVSPubsForms/BDL/BDL%20Publications/pub%20195us.pdf
[33] Birth Certificate, Tax Records, Lease Agreements, Mortgage Documents, W-2 Form, and Current Utility Bill.

Administration's Technology Transfer Services [34], and the National Conference of State Legislatures [35], fifteen states and the District of Columbia do not require the providing of *any* document to vote, one of the most fundamental rights a U.S. citizen possesses. [36] [37] Of those states that do require some type of identification to vote, only eight require a photo-identification. [38] If photo identification is not even be consistently required to exercise a right "of the most fundamental significance," nor can the requirement be said to be the least restrictive means of advancing the Government's interest here. Notably, the Department of Justice promulgates Form DOJ-361, Certification of Identity, and does not require a photograph with submission of that form. [39]

There can be no doubt that Mr. King's free exercise of religion has been substantially burdened by section 923(a)'s requirement that he betray his religious beliefs by submitting to a photograph in order to obtain a federal firearms license. Pursuant to the First Amendment to the U.S. Constitution and the Religious Freedom Restoration Act, the requirement that Mr. King obtain an FFL, and the criminal violations that stem from failing to do so, are unconstitutional and the indictment must be dismissed.

> D.    *Requiring Mr. King to Hold a Federal Firearms License and Submit a Photograph Violates the Unconstitutional Conditions Doctrine*

Section 923(a)'s requirement that Mr. King either forego his First Amendment

---

[34] https://www.usa.gov/voter-id

[35] https://www.ncsl.org/research/elections-and-campaigns/voter-id.aspx#Laws%20in%20Effect

[36] *Id.*

[37] *Illinois State Bd. of Elections v. Socialist Workers Party*, 440 U.S. 173, 184 (1979)("voting is of the most fundamental significance under our constitutional structure.").

[38] https://www.ncsl.org/research/elections-and-campaigns/voter-id.aspx#Laws%20in%20Effect

[39] https://www.justice.gov/doj/resource/certification-identity

right to free exercise of religion by submitting a photograph with an application for an FFL, or forego his Second Amendment right to engage in the commercial sale of firearms, is an *unconstitutional condition* as thoroughly explained by the U.S. Supreme Court in *Perry v. Sindermann*, 408 U.S. 593 (1972).

> Even though a person has no 'right' to a valuable governmental benefit and even though the government may deny him the benefit for any number of reasons, there are some reasons upon which the government may not rely. It may not deny a benefit to a person on a basis that infringes on his constitutionally protected interests–especially, his interest in freedom of speech. For if the government could deny a benefit to a person because of his constitutionally protected speech or associations, his exercise of those freedoms would be in effect penalized and inhibited.

The modern unconstitutional conditions doctrine recognizes that "constitutional violations may arise from the deterrent, or chilling, effect of governmental efforts that fall short of a direct prohibition against the exercise of First Amendment rights." *Bd. Of County Com'rs, Wabaunsee County, Kan. V. Umbehr*, 518 U.S. 668, 674 (1996).

The unconstitutional conditions doctrine prevents the Government from coercing people into giving up their constitutional rights. *Koontz v. St. Johns River Water Mgmt. Dist*, 570 U.S. 595, 604 (2013). Where an individual would be required to give up a constitutional right in order to exercise another, that requirement cannot stand. *See e.g., Columbia Housing & Redevelopment Corp. v. Braden*, 2022 WL 7275671, *3 (Tenn. 2022)(Holding an individual cannot be coerced into the surrender of the 'central component' of his Second Amendment right to obtain the benefit of public housing).

Mr. King is charged with engaging in the business of dealing in firearms without a license in violation of 18 U.S.C. §§ 922(a)(1)(A) and 924(a)(1)(D), an activity which falls within the ambit of the Second Amendment and a license he is ineligible to obtain under § 923(a) absent the forfeit of his First Amendment right to the free exercise of

religion. As this *Hobson's choice* is an impermissible unconstitutional condition, the indictment against him must be dismissed.

## VI.    CONCLUSION

For the reasons described *supra*, Mr. King respectfully requests that this Honorable Court dismiss the indictment against him.

Respectfully Submitted,

Date:   November 7, 2022

Joshua Prince, Esq.
Attorney ID: 306521
Civil Rights Defense Firm, P.C.
646 Lenape Rd
Bechtelsville, PA 19505
888-202-9297
610-400-8439 (fax)
Joshua@civilrightsdefensefirm.com