# IN THE UNITED STATES DISTRICT COURT

# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

UNITED STATES OF AMERICA      :

     v.                    :         CRIMINAL NO. 22-215

                            :

REUBEN KING

## GOVERNMENT'S RESPONSE IN OPPOSITION TO DEFENDANT'S
## MOTION TO DISMISS THE INDICTMENT

The United States of America, by its attorneys, Jacqueline C. Romero, United States

Attorney for the Eastern District of Pennsylvania, and Joseph A. LaBar, Assistant United States

Attorney, submits the following response in opposition to defendant's Motion to Dismiss. For

the reasons set forth below, the defendant's motion should be denied.

## I.     PROCEDURAL BACKGROUND

The defendant, Reuben King, was indicted by a grand jury on June 28, 2022. He

is charged with one count of dealing in firearms without a license, in violation of Title 18, United

States Code, Section 922(a)(1)(A).

## II.     FACTUAL BACKGROUND

Between October 24, 2019, and March 16, 2020, the defendant, Ruben King, sold

five firearms to the same undercover police officer in three separate transactions. The

transactions were all audio and video recorded. During the transactions, King offered numerous

different longarms for sale, and discussed the features of the various offerings with his

"customer" before the final purchases were completed. The transactions took place in a barn on

King's property. The undercover officer saw, and filmed, an estimated 150 long arms marked with price tags and arrayed on tables in the barn for sale.

Finally, on June 11, 2020, ATF Special Agents Neil Zubaty and Nicholas Graham served King with a cease-and-desist letter. The letter admonished King that his firearms activity appeared to bring him within the definition of a dealer in firearms, and that he should cease and desist from those activities until obtaining a license as required by federal law, or possibly face prosecution. King told the agents that he did not sell firearms as a business, but rather only occasionally sold personal long arms for which he had no further use. King asked the agents to describe the process of becoming a licensed dealer, and signed the admonition, acknowledging that he received and understood it. A copy of the letter is attached to this Answer as Exhibit One.

King did not heed the ATF admonition. In November of 2020, March of 2021, and December of 2021, King sold four firearms to two different undercover Pennsylvania State Troopers in three transactions. As before, the transactions were audio and video recorded. As before, King offered his "customers" a variety of longarms for purchase; and as before, the troopers saw numerous longarms (between 50 and 100) displayed and marked for sale.

On January 12, 2022, ATF special agents executed a federal search warrant at King's barn. They recovered ample evidence of an ongoing gun selling business, including 615 longarms, many marked with price tags; approximately 10,000 rounds of ammunition; detailed records showing thousands of purchases and sales of longarms over many years; apparent records and receipts for advertisements placed in a local newspaper offering firearms for sale under several names and phone numbers[1]; and even plastic bowls containing numerous pre-

---

[1] Agents later discovered that between October of 2019 and the date of the search in January of 2022, King posted numerous ads, offering approximately 118 guns for sale. They also discovered ads dating as far back as 2014.

marked price tags sorted by various denominations. Included among the firearms were approximately 30 brand-new, almost identical Savage Axis rifles (26 in the same caliber), each in an unopened factory box, and all in a larger palleted shipping box; as well as a similar stack of 19 Silver Eagle shotguns (18 in the same gauge), also new in box.

Agents interviewed King. He acknowledged that he had continued to sell firearms from his barn after he received the ATF cease and desist letter. He claimed that he misunderstood the admonition. He also said that, though many of the guns in the barn were marked for sale, some of them were actually part of his personal collection and those of his sons. He was vague about the source of his guns, and claimed that many were from collections and auctions. He had no explanation for the pallet of brand-new guns. He said that he received many new firearms within the few months before the search, and planned to sell most of them.

## III.    <u>DISCUSSION</u>

King now seeks to have the indictment against him dismissed. He claims he is entitled to this extraordinary remedy because the statute under which he is charged in the indictment is void for vagueness, and is otherwise an unconstitutional violation of his rights under the First and Second Amendments to the Constitution. His arguments are meritless, and his motion should be denied.

King does not provide a citation to any Rule of Procedure that would allow the Court to grant him the relief he seeks. The Court's review of the sufficiency of an indictment is generally guided by Fed. R. Crim. P. 7(c)(1) and Fed. R. Crim. P. 12(b)(3)(B). An indictment serves to inform a defendant of the charges brought against him so that he may prepare a defense and invoke the Double Jeopardy Clause in future prosecutions for the same offense. *Hamling v. United States*, 418 U.S. 87, 117 (1974); *see also United States v. Kemp*, 500 F.3d 257, 280 (3d

Cir. 2007). Consistent with this limited function, Federal Rule of Criminal Procedure 7(c)(1) requires only that an indictment "be a plain, concise, and definite written statement of the essential facts constituting the offense charged." Fed. R. Crim. P. 7(c)(1). To ensure that a jury does not entertain legally insufficient charges, Fed. R. Crim. P. 12(b)(3)(B) provides that "at any time while the case is pending, the court may hear a claim that the indictment . . . fails to . . . state an offense." Fed. R. Crim. P. 12(b)(3)(B)(v).

The Third Circuit Court of Appeals has explained that "an indictment is facially sufficient if it '(1) contains the elements of the offense intended to be charged, (2) sufficiently apprises the defendant of what he must be prepared to meet, and (3) allows the defendant to show with accuracy to what extent he may plead a former acquittal or conviction in the event of a subsequent prosecution.' " *United States v. Huet*, 665 F.3d 558, 595 (3d Cir. 2012) (quoting *United States v. Vitillo*, 490 F.3d 3145, 321 (3d Cir. 2007) (citation omitted)); *see also United States v. Urban*, 404 F.3d 754, 771 (3d Cir. 2005)). In considering a motion to dismiss, a district court must accept as true the factual allegations set forth in the indictment and construe them in a light most favorable to the government. *Huet*, 665 F.3d at 595; *United States v. Besmajian*, 910 F.2d 1153, 1154 (3d Cir. 1990) (citing *Boyce Motor Lines v. United States*, 342 U.S. 337, 343 n.16 (1952)). For these reasons, a district court's review of facts set forth in the indictment is necessarily "limited to determining whether, assuming all of those facts as true, a jury could find that the defendant committed the offense for which he was charged." *Huet*, 665 F.3d at 596. This analysis is limited to the four corners of the indictment. *See, e.g., id*. at 593; *Vitillo*, 490 F.3d at 321.

Because of these parameters, the Court of Appeals has made clear that review under Fed. R. Crim. P. 12(b)(3)(B) "is a narrow, limited analysis geared only towards ensuring that legally

deficient charges do not go to a jury." *United States v. Bergrin*, 650 F.3d 257, 268 (3d Cir. 2011) (reversing grant of dismissal pursuant to Rule 12(b)(3)(B) when indictment adequately alleged all elements and sub-elements required for the offense); *Huet*, 665 F.3d at 596-99 (reversing because district court assessed the sufficiency of the evidence and imposed a heightened pleading standard); *United States v. DeLaurentis*, 230 F.3d 659, 660 (3d Cir. 2000) (reversing the dismissal of an indictment because the trial court considered the sufficiency of the government's evidence and noting that no such "corollary" to summary judgment is available or applicable in criminal cases).

Under these standards, the allegations in the indictment in this case easily satisfy the requirements of Rules 7(c)(1) and 12(b)(3). King does not argue that the indictment fails to adequately set out the basic facts within the meaning of Rule 7(c)(1). He does argue that the charge contained in the indictment is constitutionally infirm, and thus presumably legally deficient within the meaning of Rule 12(b)(3). He is wrong.

### A. 18 U.S.C. § 922(a)(1)(A) is Not Void for Vagueness and is Properly Charged in the Indictment.

King first argues that 18 U.S.C. § 922(a)(1)(A) is void for vagueness, and is so ambiguous as to violate the rule of lenity.[2] He thus claims that he is entitled to have the charges dismissed. He is wrong.

The indictment charges that "(f)rom in or about October 24, 2019, through on or about January 12, 2022, in Gordonville, in the Eastern District of Pennsylvania, defendant Ruben King willfully engaged in the business of dealing in firearms without being licensed to do so under the

---

[2] King correctly notes that the statute has since been amended. This Answer addresses the statute as it was when King was indicted.

provisions of Chapter 44, Title 18, United States Code…(i)n violation of Title 18, United States Code, Sections 922(a)(1)(A) and 924(a)(1)(D).

The statute charged in the indictment, 18 U.S.C. § 922(a)(1)(A) provided that "It shall be unlawful…for any person…except a licensed importer, licensed manufacturer, or licensed dealer, to engage in the business of importing, manufacturing, or dealing in firearms, or in the course of such business to ship, transport, or receive any firearm in interstate or foreign commerce." The statute further provided narrowing definitions for the terms "dealer" (and "licensed dealer") and "engaged in the business." A "dealer" is--

> (A) any person engaged in the business of selling firearms at wholesale or retail; (B) any person engaged in the business of repairing firearms or of making or fitting special barrels, stocks, or trigger mechanisms to firearms; or (C) any person who is a pawnbroker. The term "licensed dealer" means any dealer who is licensed under [federal law].

18 U.S.C. § 921(a)(11). A person is "engaged in the business" of dealing in firearms if he or she-

> . . . devotes time, attention, and labor to dealing in firearms as a regular course of trade or business with the principal objective of livelihood and profit through the repetitive purchase and resale of firearms, but such term shall not include a person who makes occasional sales, exchanges or purchases of firearms for the enhancement of a personal collection or for a hobby, or who sells all or part of his personal collection of firearms.

Id. § 921(a)(21)(C). A person acts "with the principal objective of livelihood and profit" when--

> the intent underlying the sale or disposition of firearms is predominantly one of obtaining livelihood and pecuniary gain, as opposed to other intents, such as improving or liquidating a personal firearms collection.

Id. § 921(a)(22).

Taking those definitions together,  Section 922(a)(1)(A) forbids an unlicensed person to devote time, attention, and labor to selling firearms as a regular course of trade or business for the purpose of obtaining pecuniary gain. By its plain terms, the statute does not cover "occasional sales" made "for the enhancement of a personal collection or for a hobby" or sales of a personal collection.

Section 922(a)(1)(A) is not unconstitutionally vague. "A conviction fails to comport with due process if the statute under which it is obtained fails to provide a person of ordinary intelligence fair notice of what is prohibited, or is so standardless that it authorizes or encourages seriously discriminatory enforcement." *Holder v. Humanitarian Law Project*, 130 S. Ct. 2705, 2718 (2010) (quotations omitted); *United States v. Williams*, 553 U.S. 285, 304 (2008). "What renders a statute vague is not the possibility that it will sometimes be difficult to determine whether the incriminating fact it establishes has been proved; but rather the indeterminacy of precisely what that fact is." *Williams*, 553 U.S. at 306. Thus, the Supreme Court has "struck down statutes that tied criminal culpability to . . . wholly subjective judgments without statutory definitions, narrowing context, or settled legal meanings." *Id*. A criminal statute's "potential for vagueness" is reduced when Congress has employed "narrowing definitions" that "increased the clarity of the statute's terms" or when the statute incorporates a *mens rea* requirement. *Holder*, 130 S. Ct. at 2720.

Here, as discussed, Congress provided such narrowing definitions. The statute also incorporates a *mens rea* requirement. The Code only criminalizes willful violations of Section 922(a)(1)(A). Section 924 provides the penalties for violations of Section 922. And Section 924(a)(1)(D) provides penalties for any person who "willfully violates" Section 922(a)(1), among other provisions. The Government must prove that the defendant "acted with knowledge that his conduct was unlawful." *Bryan v. United States*, 524 U.S. 184, 192 (1998) (addressing the "willful" requirement of Section 924(a)(1)(D)). The willfulness requirement is important, because the vagueness of a statute "is closely related to whether that standard incorporates a requirement of *mens rea*." *Colautti v. Franklin*, 439 U.S. 379, 395 (1979) This "intent

requirement alone tends to defeat any vagueness challenge based on the potential for arbitrary enforcement." *United States v. Klecker*, 348 F.3d 69, 71 (4th Cir. 2003).

Courts have universally upheld 18 U.S.C. § 922(a)(1)(A) in the face of vagueness challenges such as that raised by King. *See, e.g.; see United States v. Alexander*, 834 F. App'x 312, 316 (9th Cir. 2020)(not precedential)(statute not void for vagueness where defendants engaged in five sales over the course of three months); *United States v. Hosford*, 843 F.3d 161, 170-171 (4th Cir. 2016) (statute constitutional facially and as applied); *United States v. Skiles*, 515 Fed. Appx. 682, 683 (9th Cir. 2013) (unpub.) (§ 922(a)(1)(A) is not vague as applied); *United States v. Shipley*, 546 Fed. Appx. 450, 456 (5th Cir. 2013) (unpub.) (void-for-vagueness claim is without merit); *United States v. Dettra*, 238 F.3d 424, at *3 (6th Cir. 2000) ("We find that 18 U.S.C. § 922(a)(1)(A) is not unconstitutionally vague as applied to the defendant."); *United States v. Skinner*, 25 F.3d 1314, 1317 (6th Cir. 1994) (holding that the phrase "engaged in the business" found in 18 U.S.C. § 1466 is not unconstitutionally vague); *United States v. Van Buren*, 593 F.2d 125, 126 (9th Cir. 1979); *United States v. King*, 532 F.2d 505, 510 (5th Cir.1976) (holding that a statute which prohibits dealing in firearms without a license is not unconstitutionally vague); *United States v. Gross*, 451 F.2d 1355, 1357 (7th Cir. 1971); *United States v. Torres*, 2010 WL 3190659 at *9-10 (D. Ariz. June 21, 2010), report and recommendation adopted, 2010 WL 3190661 (D. Ariz. Aug. 12, 2010), *aff'd sub nom. United States v. Ibarra*, 472 Fed. Appx. 819 (9th Cir. 2012) (unpub.); *United States v. Nowka*, No. 5:11-CR-00474-VEH, 2012 WL 2862061, at *4 (N.D. Ala. May 10, 2012) (The "definitions [in Section 921(a)] have the effect of narrowing the class of individuals whose conduct is illegal under the statute. It is not so vague that it is not capable of reasonable interpretation."), report

and recommendation adopted, No. 5:11-CR-474-VEH-HGD, 2012 WL 2862053 (N.D. Ala. July 11, 2012).

The Fourth Circuit recently addressed the question of vagueness in *United States v. Hosford*, *supra* noting that "the prohibition against unlicensed firearm dealing … regulates only individuals who regularly sell, for the principal purpose of accruing profit or maintaining a livelihood, firearms that are not part of their personal collection or for their hobby." 843 F.3d 161, 170-71 (4th Cir. 2016). The court concluded that "applying the narrower and more clarifying statute to [defendant]'s similarly commercial sale of firearms is not unconstitutionally vague…[W]here, as here, the statute clearly gave notice to [defendant] that he ought not to regularly sell firearms that he only purchased and resold for profit--firearms not acquired for the purpose of a personal collection or for the hobby of collecting firearms--his as-applied vagueness challenge fails." Id.

In *Hosford*, the defendant "engaged in transactions that resulted in the sale or attempted sale of a dozen weapons over the course of a few months." *Id*.  Here, King did far more. He dedicated part of a building on his property to display and sell guns; sold guns to undercover investigators on multiple occasions over a two year period; amassed an inventory of over 600 longarms, marking many of them with price tags; placed numerous advertisements in a local newspaper offering specific guns for sale; maintained records of his acquisitions and sales of hundreds of guns he sold and the price he received for them; and continued all of this despite a written notice warning that his activities were illegal.

King's vagueness challenge must be considered in light of the rule that "a [person] who engages in some conduct that is clearly proscribed cannot complain of the vagueness of the law as applied to the conduct of others."  *Holder,* 130 S. Ct. at 2719 (brackets and quotations

omitted. "Except where First Amendment rights are involved, vagueness challenges must be evaluated in light of the facts of the case at hand." *United States v. Marte*, 356 F.3d 1336, 1342 (11th Cir. 2004) (quotations omitted). Because this case does not involve First Amendment rights, King bears the burden to show that the challenged statutes did not "clearly proscribe[]" the conduct charged in the indictment. *Holder*, 130 S. Ct. at 2719. King has not carried that burden; Section 922(a)(1)(A) clearly proscribed the conduct alleged in the indictment, which was that "(f)rom in or about October 24, 2019, through on or about January 12, 2022, in Gordonville, in the Eastern District of Pennsylvania, defendant Ruben King willfully engaged in the business of dealing in firearms without being licensed to do so under the provisions of Chapter 44, Title 18, United States Code…(i)n violation of Title 18, United States Code, Sections 922(a)(1)(A) and 924(a)(1)(D).

In sum, the indictment charges King with dealing in firearms without a license, for more than two years, for personal profit, in knowing violation of the law. Such conduct is "clearly proscribed" by  Section 922(a)(1)(A).  *Holder*, 130 S. Ct. at 2719. Accordingly, King has not shown that the statute is vague. If King believes his actions were factually distinct from behavior that fell within the statute, he may present that fact-bound defense to the jury at trial; he is not entitled to dismissal of the indictment. His motion should be denied.

> **B.    The Requirement Of A License To Deal In Firearms Does Not Violate The Second Amendment, Nor Does It Violate King's First Amendment or Statutory Right To Practice His Faith.**

King next raises several arguments arising from his status as a member of the Amish faith who is precluded from having a photograph taken of himself, and thus is unable to obtain the state-issued photographic identification required to get a license to deal in firearms. He first argues that under *New York State Rifle & Pistol Association v. Bruen*, 142 S. Ct. 2111 (2022), the

requirement that he have a license to deal in firearms violates his "Second Amendment right to engage in the commercial purchase and sale of firearms." Motion at 13. He next argues that the requirement that he present a photographic identification to obtain such a license violates his First Amendment and statutory rights to the free exercise of religion, and presents a "Hobson's choice" between his First Amendment religious freedoms and his Second Amendment right to commercially deal in firearms. Motion at 14.

King's arguments fail. Contrary to his assertion, there is no Second Amendment right to deal in firearms. There is thus no constitutionally impermissible tension in this case between his exercise of religious freedom under the First Amendment and any right guaranteed by the Second Amendment.

King's attempt to import the Supreme Court's analysis in *Bruen* to the charges and circumstances  of this case is fundamentally at odds with *Bruen's* central holdings. When undertaking a faithful analysis of *Bruen* (and the other recent Supreme Court precedent on which it is based), King's Second Amendment challenges to the charge in this case, whether facial or as applied, do not get off the ground. In *Bruen*, the Supreme Court held, "consistent with *Heller* and *McDonald*, that the Second and Fourteenth Amendments protect an individual's right to carry a handgun for self-defense outside the home." *Bruen*, 142 S.Ct. at 2122. In so holding, the Court "reiterate[d] that the standard for applying the Second Amendment is as follows: When the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct. The government must then justify its regulation by demonstrating that it is consistent with the Nation's historical tradition of firearm regulation." Id. at 2129 (emphasis added). The Court recognized that the first step of analyzing the "plain text" of the Second Amendment was "[i]n keeping with *Heller*." Id. at 2126. However, the Court rejected the post-

Heller test that had developed among the circuit and district courts at the second step of the analysis, in which courts applied so-called means-end scrutiny (i.e., strict or intermediate scrutiny) to laws that were found to fall within the Second Amendment's "plain text." Instead, the Court held that an analysis of the "Nation's historical tradition of firearm regulation," not means-end scrutiny, is the appropriate standard at the second step. Id.

King cannot get past the first step of the *Bruen* analysis, and so he ignores it, instead stating in conclusory fashion that "(a)n inescapable precondition of keeping and bearing arms is purchasing those arms, making the implicit right to buy and sell firearms a necessary complement protected by the plain text of the Second Amendment." Motion at 20. But *Bruen* does not focus on inescapable preconditions or "implicit" rights; it focuses on the plain text of the Second Amendment. In presuming without any analysis that the charged gun trafficking conduct here implicates the Second Amendment, King ignores the Court's clear and repeated articulation of what the "plain text" of the Second Amendment covers. Drawing upon its earlier opinions in *Heller* and *McDonald*, the Court in *Bruen* reiterated that the "plain text" of the Second Amendment – in particular, "the right of the people to keep and bear Arms" – "guarantee[s] the individual right to possess and carry weapons in case of confrontation." Id. at 2119 (quoting *Heller*, 554 U.S. at 592). The Court repeatedly spoke of the covered conduct as "an individual right to self-defense." Id.; see also, e.g., id. at 2118 (Second Amendment "'surely elevates above all other interests the right of law abiding, responsible citizens to use arms' for self-defense" (*quoting Heller*, 554 U.S. at 635)); id. at 2118 ("As we stated in *Heller* and repeated in *McDonald*, 'individual self-defense is the 'central component' of the Second Amendment right.'") (emphasis in original); id. at 2134 ("*Heller* further confirmed that the right to 'bear arms' refers to the right to 'wear, bear, or carry . . . upon the person or in the clothing or

in a pocket, for the purpose . . . of being armed and ready for offense or defensive action in a case of conflict with another person.'"); id. at 2135("self-defense is 'the central component of the [Second Amendment] right itself'") (emphasis in original).

In committing the conduct charged in the indictment, King did not seek "to keep or bear" firearms. To the contrary: all of the charged conduct relates to his selling guns to other people. Because the plain text of the Second Amendment does not protect this conduct, the analysis can and should stop there. *Bruen* itself confirmed that, if the if the "regulated conduct" falls outside the Second Amendment, "then the analysis can stop  there; the regulated activity is categorically unprotected." 142 S.Ct. at 2126 (quotation omitted).

While few cases have yet interpreted *Bruen*, three of the Justices in the *Bruen* majority—to say nothing of the three Justices in dissent—wrote or joined concurrences emphasizing that the Court's holding was narrow, and that *Bruen* would not provide relief for individuals like King. In his concurrence, Justice Alito emphasized "[a]ll that we decide in this case is that the Second Amendment protects the right of law abiding people to carry a gun outside the home for self-defense" and that a law that makes doing so "virtually impossible" may be unconstitutional." *Bruen*, 142 S.Ct. at 2159 (Alito, J. concurring). Justice Kavanaugh, joined by Chief Justice Roberts, wrote separately to underscore that the Second Amendment allows a "variety" of gun regulations. *Bruen*, 142 S.Ct. at 2162 (Kavanaugh, J. concurring). He reiterated that the rights secured by the Second Amendment are not unlimited, and that the Court's decision should not be taken as casting doubt on "*laws imposing conditions and qualifications on the commercial sale of arms." Bruen*, 142 S.Ct. at 2162 (Kavanaugh, J. concurring)(quoting *Heller*, 128 S.Ct. at 2783) (emphasis added). This statement is consistent with Justice Kavanaugh's majority opinion in *McDonald v. Chicago*, 561 U.S. 742 (2010), which forcefully emphasized that: "We made it

clear in *Heller* that our holding did not cast doubt on such longstanding regulatory measures as 'prohibitions on the possession of firearms by felons and the mentally ill,' 'laws forbidding the carrying of firearms in sensitive places such as schools and government buildings, *or laws imposing conditions and qualifications on the commercial sale of arms*.' We repeat those assurances here." Id. at 786 (citation omitted)(emphasis supplied).

Thus, the majority's repeated focus on the Second Amendment's "central component" of an individual right to self-defense and the concurring Justices' express limitations of their views to that narrow holding underscore the fallacy of King's argument here. Without any acknowledgment of his burden at step one, King presumes the unlicensed gun dealing charges are similarly covered by the "plain text" of the Second Amendment. He is obviously wrong. With the proper framework in mind, Count One pertains to conduct not implicated by the Second Amendment and thus no further analysis - of "historical tradition" or otherwise - is necessary.

In sum, King cannot proceed past step one of the Second Amendment analysis reaffirmed in *Bruen*. *Heller*, *McDonald*, and Justice Kavanaugh's concurrence in *Bruen* all explicitly stated that the Court's opinions should not be seen as "cast[ing] doubt" on "laws imposing conditions and qualifications on the commercial sale of arms." *See Heller*, 554 U.S. at 626-27; *McDonald*, 561 U.S. at 787 (Alito, J.); *Bruen*, 142 S. Ct. at 2162 (Kavanaugh, J., concurring). The unlicensed dealing in firearms that is charged in Count One- both on its face or as applied to King's conduct alleged in the indictment- is not covered by the "plain text" of the Second Amendment, and thus no analysis of the "Nation's historical tradition of firearm regulation" is necessary or warranted. King is not deprived of any constitutional right by the requirement that he must be licensed to engage in the business of selling firearms; nor is he presented with a

constitutionally untenable choice between the exercise of his First and Second Amendment rights by the requirement of photo identification for obtaining such a license.

Finally, King's claim that the licensing requirement and the associated requirement of a photo identification for that license violate the Religious Freedom Restoration Act fails as well. " 'In general,' RFRA provides [that] sincere religious objectors must be given a pass to defy obligations that apply to the rest of us, if refusing to exempt or to accommodate them would impose a substantial burden on their sincere exercise of religion." *United States v. Christie*, 825 F.3d 1048, 1055 (9th Cir. 2016). "But this rule is not absolute. 'The mere fact that [a person's] religious practice is [substantially] burdened by a governmental program does not mean that an exemption accommodating his practice must be granted.' " *Id*. at 1055 (*quoting Thomas v. Review Board of Ind. Employment Sec. Div*., 450 U.S. 707, 718 (1981)).

To trigger strict scrutiny of a criminal prosecution under the RFRA, a defendant must (1) articulate the scope of his beliefs, (2) show that his beliefs are religious, (3) prove that his beliefs are sincerely held and (4) establish that the exercise of his sincerely held religious beliefs is substantially burdened. *United States v. Zimmerman*, 514 F.3d 851, 854 (9th Cir. 2007). Government action substantially burdens religion when it "[p]uts substantial pressure on an adherent to modify his behavior and to violate his beliefs," *Thomas v. Review Board of Ind. Employment Sec. Div*., 450 U.S. 707, 718 (1981), or requires an individual to choose between "either abandoning his religious principle or facing criminal prosecution," *Braunfeld v. Brown*, 366 U.S. 599, 605 (1961). *See Navajo Nation v. U.S. Forest Serv*., 535 F.3d 1058, 1070-71 (9th Cir. 2008) (en banc) (applying the same test under the RFRA); *Mack v. O'Leary*, 80 F.3d 1175, 1179 (7th Cir. 1996) (same). The RFRA does not immunize "conduct violating a criminal law that protects people ... from physical harm." *American Life League, Inc. v. Reno*, 47 F.3d 642,

656 (4th Cir. 1995) (rejecting a RFRA challenge to the Freedom of Access to Clinic Entrances Act ("FACE"), 18 U.S.C. § 248).

In cases where RFRA has been successfully invoked, the challenged government restrictions forced believers to do, or refrain from doing, actions that were either central or antithetical to their religious faith and practice. *See, e.g*.,  *Holt v. Hobbs*, 135 S.Ct. 853 (2015) (prohibition against prison inmates wearing short beards); *Burwell v. Hobby Lobby Stores, Inc*., 134 S.Ct. 2751, 2761-85 (2014) (federal regulations that required closely held corporations to provide health insurance to their employees that covered certain contraceptive methods); *Gonzales v. O Centro Espirita Beneficente Uniao do Vegetal*, 546 U.S. 418, 427-38 (2006) (religious group's sacramental use of a controlled substance); *McAllen Grace Brethren Church v. Salazar*, 764 F.3d 465 (5th Cir. 2014) (religious use of bald eagle feathers without a permit); *Oklevueha Native American Church of Hawaii, Inc. v. Holder*, 676 F.3d 829 (9th Cir. 2012) (using marijuana); *United States v. Hardman*, 297 F.3d 1116 (10th Cir. 2002) (possessing eagle feathers).

Here, by contrast, King does not allege that dealing in firearms is central to his Amish faith such that his inability to be licensed to do so substantially burdens his religious practice. Indeed, King does not allege that he ever attempted to obtain a license to deal in firearms, was then denied due to a lack of photo identification, and sought and was denied a religious accommodation under the RFRA. Had he done so, he could have sought relief through the courts at that point; the issue would have been ripe for some disposition under the Act. He instead decided to simply ignore the licensing requirement and continue running an unlicensed gun business from a building on his property. He now asserts that the RFRA protects that decision from scrutiny at trial by warranting dismissal of the indictment. He is wrong.

16

**IV.**     **<u>CONCLUSION</u>**

In light of all the above the Court should deny King's Motion to Dismiss Indictment.

Respectfully submitted,

JACQUELINE C. ROMERO
United States Attorney


 /s/ *Joseph A. LaBar*
JOSEPH A. LaBAR
Assistant United States Attorney

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this date I caused a true and correct copy of the foregoing response of the United States to be served **electronic filing/ e-mail** upon counsel for defendant:

> Joshua Prince, Esq.
> Attorney ID: 306521
> Civil Rights Defense Firm, P.C.
> 646 Lenape Rd
> Bechtelsville, PA 19505

/s/ Joseph A. LaBar
JOSEPH A. LaBAR
Assistant United States Attorney

Date:   December 1, 2022

18