UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

_____

| | |
|---|---|
| UNITED STATES OF AMERICA : | |
| : | |
| v. : | No. 5:22-cr-00215-001 |
| : | |
| REUBEN KING, : | |
|       Defendant : | |

_____

**O P I N I O N**
Defendant's Motion to Dismiss Indictment, ECF No. 21 – Denied

**Joseph F. Leeson, Jr.**                                                       **December 14, 2022**
**United States District Judge**

      The defendant, Reuben King, was indicted by a grand jury with a single count of dealing in firearms without a license from on or about October 24, 2019 through on or about January 12, 2022, in violation of the Gun Control Act, specifically, title 18, United States Code, Section 922(a)(1)(A) and 924(a)(1)(D). The indictment indicates that King had well over 100 firearms and more than 10,000 rounds of assorted ammunition that were involved in the violation of the Gun Control Act. Before the Court now is King's motion to dismiss the indictment. *See* Mot., ECF No. 21. He does not argue that the indictment is deficient. Nor does he challenge the facts alleged in the indictment. Instead, he argues that the indictment must be dismissed because the sections of the Act that he has been indicted under are unconstitutional for four reasons. The Court addresses each in turn.

      **i.**     **The Act is not unconstitutionally vague.**

      King first argues that the sections of the Gun Control Act at issue are void for vagueness and violate the rule of lenity. A criminal statute may be deemed void for vagueness if it "(1) fails to provide people of ordinary intelligence a reasonable opportunity to understand what conduct it prohibits; or (2) authorizes or even encourages arbitrary and discriminatory enforcement." *United States v. Fullmer*, 584 F.3d 132, 152 (3d Cir. 2009) (cleaned up). Similarly, the rule of lenity

provides that "an ambiguous criminal statute is to be construed in favor of the accused." *Staples v. United States*, 511 U.S. 600, 619 n.17 (1994). The two doctrines work together to ensure that criminal statutes provide a fair warning as to what conduct is unlawful. *See States v. Lanier*, 520 U.S. 259, 266 (1997). With that in mind, the Court reviews the language of the Act at issue in this case.

18 U.S.C. § 922(a)(1)(A) states, "[i]t shall be unlawful for any person except a licensed importer, licensed manufacturer, or licensed dealer, to engage in the business of importing, manufacturing, or dealing in firearms, or in the course of such business to ship, transport, or receive any firearm in interstate or foreign commerce." At the time King is alleged to have violated that section, the term "engaged in the business" was defined as follows:

> as applied to a dealer in firearms, as defined in section 921(a)(11)(A), a person who devotes time, attention, and labor to dealing in firearms as a regular course of trade or business with the principal objective of livelihood and profit through the repetitive purchase and resale of firearms, but such term shall not include a person who makes occasional sales, exchanges, or purchases of firearms for the enhancement of a personal collection or for a hobby, or who sells all or part of his personal collection of firearms

18 U.S.C.A. § 921 (a)(21)(C) (2019) (amended 2022). The term "with the principal objective of livelihood and profit" meant,

> that the intent underlying the sale or disposition of firearms is predominantly one of obtaining livelihood and pecuniary gain, as opposed to other intents, such as improving or liquidating a personal firearms collection: Provided, That proof of profit shall not be required as to a person who engages in the regular and repetitive purchase and disposition of firearms for criminal purposes or terrorism.

*Id*. § 921 (a)(22) (2019) (amended 2022). Thus, at the time King is alleged to have violated the Act, a person could sell and buy firearms occasionally if it was to enhance a personal collection or as a hobby and could sell "all or part of his personal collection of firearms" without acquiring a license. However, a person who sold firearms as part of "a regular course of trade or business with the

principal objective of livelihood and profit through the repetitive purchase and resale of firearms" was required to obtain a license under the Act.

King argues that those sections of the Act are vague because a man of common intelligence would have to guess as to what conduct was prohibited. To support that argument, King points out that the Bureau of Alcohol, Tobacco, Firearms, and Explosives published guidance that stated "[f]ederal law does not establish a 'bright-line' rule for when a federal firearms license is required." ECF No. 21, Ex. A. The guidance goes on to state that "there is no specific threshold number or frequency that triggers the licensure requirement." *Id*. King also claims that Congress amended the definitions for "engaged in the business" and "with the principal objective of livelihood and profit" in 2022 because the prior versions were ambiguous. In sum, King argues that 18 U.S.C. § 922(a)(1)(A) is void because there was no way for him to know when his dealings in firearms graduated from the "occasional", which can be done without a license, to the regular and repeated sale of firearms for profit, which requires a license.

The Court first points out that although King claims that Congress amended the Act because of its supposed vagueness, he does not cite any legislative history or other sources to support that claim. More importantly, King's challenge for vagueness must be considered in light of the facts of this case. In other words, it is not enough for King to claim that the Act could be vague as applied to the conduct of others; he must show that the Act is vague as applied to his alleged conduct. *Vill. of Hoffman Ests. v. Flipside, Hoffman Ests., Inc.*, 455 U.S. 489, 495 (1982) ("A plaintiff who engages in some conduct that is clearly proscribed cannot complain of the vagueness of the law as applied to the conduct of others."). In this case, King's alleged conduct is clearly proscribed by the Act.

For example, the Government alleges that King sold nine firearms in total to three different undercover police officers over the course of six separate transactions during the relevant time period. *See* ECF No. 23, Resp. at 1–2. The Government further alleges that, upon executing a search

warrant, it discovered that King had 615 firearms in his barn, many of which were marked with price tags, as well as receipts for advertisements in a local newspaper offering firearms for sale. *Id*. at 2. Indeed, the indictment lists more than 100 firearms and more than 10,000 rounds of ammunition as being involved in the alleged violation of the Act.

Even though there is not a bright-line rule for how many firearm transactions it takes to trigger the need for a license, King's alleged conduct clearly trips that trigger because it goes well beyond the occasional buying and selling that occurs with maintaining a personal collection or for pursuing a hobby. King may, of course, present evidence to a jury that his conduct did not require a license under the Act, but neither the vagueness doctrine nor the rule of lenity is grounds for dismissing the indictment in this case.

    **ii.**    **The Act does not violate the Second Amendment.**

King contends next that the Gun Control Act is unconstitutional under the Second Amendment of the Constitution. The Second Amendment states, "[a] well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed." U.S. CONST. amend. II. "When the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct." *New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 142 S. Ct. 2111, 2129–30 (2022). The Supreme Court has held that the right to "bear arms" refers to the right to "wear, bear, or carry upon the person or in the clothing or in a pocket, for the purpose of being armed and ready for offensive or defensive action in a case of conflict with another person." *Id*. at 2134 (cleaned up). Thus, the plain text of the Second Amendment protects the "right to keep and bear arms for self-defense." *Id*. at 2125. If the government wishes to regulate conduct that is protected by the plain text of the Second Amendment, then it must "justify its regulation by demonstrating that it is consistent with the Nation's historical tradition of firearm regulation." *Id*. at 2130.

King argues that his alleged conduct—buying and selling firearms—is protected by the Second Amendment because it is "[a]n inescapable pre-condition of keeping and bearing arms . . . making the implicit right to buy and sell firearms a necessary complement protected by the plain text of the Second Amendment." Resp. at 20. However, that argument is unpersuasive because in determining whether the Act violates the Second Amendment, the Court looks at the Second Amendment's plain text; it does not consider "implicit" rights that may be lurking beneath the surface of the plain text.

Even if the Court assumed that there is an implicit right in the Second Amendment to buy and sell firearms in order to keep and bear arms, that is not the same thing as a right to buy and sell firearms as a regular course of trade or business with the principal objective of livelihood and profit through the repetitive purchase and resale of firearms. In other words, the Second Amendment does not protect the *commercial* dealing of firearms. King cites to two cases to support his argument that his alleged conduct is protected by the Second Amendment, but both cases confirm that the government may regulate the commercial sale of firearms. *See D.C. v. Heller*, 554 U.S. 570, 626–27 (2008) ("nothing in our opinion should be taken to cast doubt on longstanding . . . laws imposing conditions and qualifications on the commercial sale of arms*"); see also United States v. Marzzarella*, 614 F.3d 85, 88 (3d Cir. 2010) (explaining that a regulation on "the commercial sale of firearms" is "presumptively valid").

In sum, King is alleged to have violated the Gun Control Act by engaging in the commercial sale of firearms without a license. That conduct is not protected by the plain text of the Second Amendment. The Act does not stop King from keeping or bearing arms. The Act does not keep him from buying and selling firearms in order to maintain a private collection. Nor does the Act prohibit the commercial sale of firearms outright; it simply requires a license to do so. As a result, the Act does not violate the Second Amendment.

### iii. The Act does not place a substantial burden on the exercise of religion.

King contends next that the Act violates his First Amendment right to the free exercise of religion and the Religious Freedom Restoration Act (RFRA). The First Amendment provides that "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; or abridging the freedom of speech, or of the press; or the right of the people peaceably to assemble, and to petition the Government for a redress of grievances." U.S. CONST. amend. I. Similarly, the RFRA provides that the government "shall not substantially burden a person's exercise of religion even if the burden results from a rule of general applicability" unless the government "demonstrates that the application of the burden to the person (1) is in furtherance of a compelling governmental interest; and (2) is the least restrictive means of furthering that compelling governmental interest." 42 U.S.C. § 2000bb-1.

Whether a burden is substantial under the RFRA is a question of law. *Real Alts., Inc. v. Sec'y Dep't of Health & Hum. Servs.*, 867 F.3d 338, 356 (3d Cir. 2017). The RFRA provides relief only if the burden on religious exercise is indeed substantial; it does not provide relief "from all government burdens." *Id*. at 357. "There is no substantial burden if the governmental action does not coerce the individuals to violate their religious beliefs or deny them the 'rights, benefits, and privileges enjoyed by other citizens'—even if 'the challenged Government action would interfere significantly with private persons' ability to pursue spiritual fulfillment according to their own religious beliefs.'" *Id*. (*quoting Lyng v. Nw. Indian Cemetery Protective Ass'n*, 485 U.S. 439, 449 (1988)).

As a practicing and observant member of the Amish faith, King argues that the Act substantially burdens his exercise of religion. S*ee* Mot. at 27. Specifically, King takes issue with Section 923 of the Act, which requires applicants to submit a photograph of themselves when applying for a license. *See* 18 U.S.C. § 923(a). King claims that his Amish faith precludes him

"from willingly submitting to a photograph". Mot. at 14. He also cites to *Quaring v. Peterson*, 728 F.2d 1121 (8th Cir. 1984) as an example of when a district court held that the requirement to sit for a photograph to receive a license from the state violated the First Amendment right to the free exercise of religion. That case, however, is not applicable here.

In *Quaring*, Quaring applied for a Nebraska driver's license but refused to have her photograph taken for religious reasons. *Id*. at 1122. The Eighth Circuit Court of Appeals held that the photograph requirement placed "an unmistakable burden upon her exercise of her religious beliefs" because the privilege of driving a car was an "important" one. *Id*. at 1125. The Eighth Circuit reasoned that the privilege of driving a car was important because Quaring needed "to drive a car for numerous daily activities", which included both personal and work-related activities. *See id*. The Eight Circuit therefore affirmed "the district court's issuance of an injunction requiring the Nebraska officials to issue Quaring a driver's license without requiring her to be photographed." *Id*. at 1128. Unlike Quaring, King never applied for a license under the Act.

Submitting a photograph is only one requirement under the Act. *See* 18 U.S.C. § 923. Since King never applied, he cannot be certain that he would have received a license even absent the photograph requirement. Importantly, as the Government points out, King does not claim that he ever sought a religious accommodation under the RFRA. Had he done so, and been denied an exemption from the photograph requirement, then the Court's analysis may very well be different. However, since King never applied or sought an exemption from the photograph requirement, he cannot claim now that his freedom to exercise his faith was substantially burdened under the Act.

Moreover, the commercial selling of firearms is not an important benefit or privilege, unlike the privilege of driving a car. As the Eighth Circuit explained in *Quaring*, the privilege of driving a car is an important one because many citizens rely on driving to complete daily personal and work-related activities. The same cannot be said for the privilege of dealing in firearms commercially.

King does not make any arguments as to why such conduct is an important privilege for him. For example, King does not claim that dealing commercially in firearms is central to his Amish faith. Nor does he claim that the practice is important in his personal or business life.

### iv. The Act does not violate the unconstitutional conditions doctrine.

Finally, King contends that the Act violates the unconstitutional conditions doctrine. That doctrine prohibits the government from coercing people into giving up their constitutional rights in exchange for something else. *Koontz v. St. Johns River Water Mgmt. Dist.*, 570 U.S. 595, 604 (2013). Even if "a person has no 'right' to a valuable government benefit and even though the government may deny him the benefit for any number of reasons, there are some reasons upon which the government may not rely." *Perry v. Sindermann*, 408 U.S. 593, 597 (1972). "It may not deny a benefit to a person on a basis that infringes his constitutionally protected interests—especially, his interest in freedom of speech." *Id*.

King argues that the Act violates the unconstitutional conditions doctrine because it forces him to choose between a license to deal in firearms commercially or his First Amendment right to exercise his religious belief of not being photographed. However, as the Court has noted, King never applied for a license under the Act. As a result, he was never officially denied a license for any reason, including for failing to submit a photograph. Because King never applied for a license under the Act, he cannot claim that he was denied the benefit of a license based on his refusal to submit to photographing.

King cannot have been denied a benefit that he never applied for.

## CONCLUSION

The Act is not vague when applied to King's alleged conduct because the alleged conduct is clearly proscribed by the Gun Control Act. Nor does the Act violate the Second Amendment because the Second Amendment does not create a right to deal in firearms commercially. Also,

because King never applied for a license under the Act or sought a religious exemption from the photograph requirement, he cannot claim now that the Act caused a substantial burden on his ability to exercise his religion, nor can he claim that he was coerced to give up a constitutional right to receive a license under the Act. For those reasons, and for those given above, King's Motion is denied.

 A separate Order follows.

BY THE COURT:

/s/ Joseph F. Leeson, Jr.
JOSEPH F. LEESON, JR.
United States District Judge
