Joshua Prince, Esquire
Attorney Id. 306521
Civil Rights Defense Firm, P.C.
646 Lenape Road
Bechtelsville, PA 19505
888-202-9297 ext 81114
610-400-8439
Joshua@CivilRightsDefenseFirm.com

UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| UNITED STATES OF AMERICA | : | |
|---|---|---|
| | : | |
| v. | : | No. 5:22-cr-00215-001 |
| | : | |
| REUBEN KING | : | |
| Defendant | : | |

**DEFENDANT REUBEN KING'S BRIEF IN SUPPORT OF HIS MOTION TO SET ASIDE THE VERDICT AND FORFEITURE OR ALTERNATIVELY, RENEWED MOTION TO DISMISS INDICTMENT**

As Mr. King addressed at length in his Motion to Dismiss (ECF No. 21) and Brief in Support (ECF No. 21-2),[1] the U.S. Supreme Court's decision in *NYSRPA v. Bruen,* 142 S.Ct. 2111, 2126 (2022), requires that any law impinging on conduct protected by the Second Amendment must be consistent with this Nation's historical tradition of firearms regulation, in order to be constitutional. In denying his Motion to Dismiss, this Court did not embark upon the analysis required by *Bruen* and now by *Range v. Attorney General of the U.S., et al*, No. 21-2835, 2023 WL 3833404 (3d Cir. June 6, 2023), but rather held that the Second Amendment does not cover the buying or selling of arms, even though Mr. King pointed to several federal court decisions, including from the Third Circuit, that the scope of the Second Amendment implicitly includes the ability to sell firearms. *See*,

---

[1] Mr. King incorporates by reference herein all arguments made in his Motion to Dismiss and Brief in Support.

*United States v. Marzzarella*, 614 F.3d 85, 92 fn. 8, (3d Cir. 2010)(declaring that "the sale of firearms do not fall outside the scope of the Second Amendment" as it would otherwise foreclose the right to keep and bear arms); *see also*, *Ezell v. City of Chicago*, 651 F.3d 684, 704 (7th Cir. 2011)("The right to possess firearms for protection implies *a corresponding right to acquire* and maintain proficiency in their use; the core right wouldn't mean much without the training and practice that make it effective.")(emphasis added); *Luis v. United States*, 578 U.S. 5, 26 (2016)(Thomas, J., concurring, "[c]onstitutional rights thus implicitly protect those closely related acts necessary to their exercise.")

Yesterday, the Third Circuit issued its *en banc* decision in *Range v. Attorney General of the U.S., et al*, wherein, it acknowledged that consistent with *Bruen*, that a "two-step approach [w]as one step too many" and that the appropriate test is where the plain text covers an individual's conduct, the Constitution presumptively protects that conduct … [unless] a firearm regulation is consistent with this Nation's historical tradition." 2023 WL 3833404, at *3. As this Court did not have the benefit of the *Range* decision and the test specified therein in ruling on Mr. King's Motion to Dismiss, Mr. King is filing this instant motion, because, as discussed *infra*, his conduct, as declared by binding Third Circuit precedent, is protected by the Second Amendment and the Government cannot demonstrate that the regulation is consistent with this Nation's historical tradition of firearm regulation.

In addressing whether the text applies to an individual and his conduct, the Third Circuit turned to the U.S Supreme Court's decision in *D.C. v. Heller*, 554 U.S. 570 (2008) and the cases it cited to approvingly, in finding that even those previously

convicted of criminal offenses are "the people" referred to in the Second Amendment and his conduct of desiring to exercise his Second Amendment rights by procuring a firearm was protected. No different than in this situation, as the *Range* decision does not abrogate the statement by the Third Circuit in *Marzzarella* that "*the sale of firearms do not fall outside the scope of the Second Amendment*" (614 F.3d 85, 92 fn. 8)(emphasis added) [2] and the *Heller* Court cited approvingly to *Andrews v. State,* 50 Tenn. (3 Heisk.) 165, 178 (1871), which held that "[t]he right to keep arms, necessarily involves the right to purchase them, to keep them in a state of efficiency for use, and to purchase and provide ammunition suitable for such arms," there can be no dispute that the Mr. King's conduct is protected by the Second Amendment and thus, as held by *Range*, the government must prove that the law "is consistent with the Nation's historical tradition of firearm regulation." 2023 WL 3833404, at *5.

As Mr. King addressed at length in his Brief in Support of his Motion to Dismiss (ECF No. 21-2), to demonstrate that a regulation is consistent with this Nation's historical *tradition* of firearm regulation, while it does not need to be a "historical twin," the tradition of a state, [3] around the time of Founding, must, at a minimum, be a historical

---

[2] And of course, this is consistent with First Amendment jurisprudence, such as *American Booksellers Association v. Hudnut,* 771 F.2d 323 (7th Cir. 1985), where the Seventh Circuit found that booksellers themselves could successfully bring a First Amendment challenge – without need to rely on the customers' rights as book buyers – to an Indianapolis ordinance that criminalized their sale of what the ordinance called "pornography." This was later affirmed by the U.S. Supreme Court in *Hudnut v. Am. Booksellers Ass'n*, 475 U.S. 1001 (1986).

This principle goes back to *Pierce v. Society of Sisters*, 268 U.S. 510 (1925), where the owners of religious schools had standing to raise the constitutional rights of their students and families, successfully bringing a Fourteenth Amendment challenge against a state law that forbade all private K–12 schools.

[3] *See,* Bruen, 142 S. Ct. at 2154-55 (finding the statutes of territories deserving of "little weight" because they were "localized," and "rarely subject to judicial scrutiny").

analogue. *Bruen*, 142 S.Ct. at 2126, 2133 (emphasis added). But a single historical analogue around the time of Founding of a state is not a tradition; rather, it is a mere aberration or anomaly, with no followers.[4] Even two or three historical analogues of the states around the time of Founding are at best a trend and not a tradition,[5] especially when short-lived.[6]

       In addressing what constitutes the Nation's historical tradition of firearm regulation, *Bruen* explains that "when it comes to interpreting the Constitution, not all history is created equal." *Id*. at 2136. That is why courts "must . . . guard against giving postenactment history more weight than it can rightly bear." *Id.* "As [the Court] recognized in *Heller* itself, because post-Civil War discussions of the right to keep and bear arms came '75 years after the ratification of the Second Amendment, they do not provide as much insight into its original meaning as earlier sources.'" *Id.* at 2137 (quoting *Heller*, 554 U.S. at 614); *see also Sprint Communications Co. v. APCC Servs., Inc.,* 554 U.S. 269, 312 (2008)(Roberts, C.J., dissenting) ("The belated innovations of the mid- to late-19th-century courts come too late to provide insight into the meaning of [the Constitution in 1787]"). In fact, "post-ratification adoption or acceptance of laws that are inconsistent with the original meaning of the constitutional text obviously cannot

---

[4] *See, D.C. v. Heller*, 554 U.S. at 632 ("[W]e would not stake our interpretation of the Second Amendment upon a single law ... that contradicts the overwhelming weight of other evidence.")

[5] *See, Ezell*, 651 F.3d at 706 (finding that two historical statutes "falls far short of establishing that [a regulated activity] is wholly outside the Second Amendment as it was understood" in 1791); *Illinois Ass'n of Firearms Retailers*, 961 F. Supp. 2d 928, 937 (N.D. Ill. 2014) ("[C]itation to a few isolated statutes—even to those from the appropriate time period—fall[s] far short of establishing that gun sales and transfers were historically unprotected by the Second Amendment") (internal quotation marks omitted).

[6] *See, Bruen*, 142 S. Ct. at 2155 ("[T]hese territorial restrictions deserve little weight because they were . . . short lived.")

overcome or alter that text." *Bruen*, 142 S. Ct. at 2137 (quoting *Heller v. District of Columbia*, 670 F.3d 1244, 1274, n. 6 (D.C. Cir. 2011) (Kavanaugh, J., dissenting)).

*Bruen* thus establishes that this Court must prioritize Founding era evidence, while evidence from around the "mid- to late- 19th century" is at most "secondary." *Id.* at 2137. "19th-century evidence [is] treated as mere confirmation of what the Court thought had *already been established*" in the Founding era. *Id.* (emphasis added). This makes sense because the "individual rights enumerated in the Bill of Rights and made applicable against the States through the Fourteenth Amendment *have the same scope* as against the Federal Government." *Id.* (citing *Ramos v. Louisiana*, 140 S.Ct. 1390, 1397 (2020); *Timbs v. Indiana*, 139 S.Ct. 682, 686–687 (2019); *Malloy v. Hogan*, 378 U.S. 1, 10–11 (1964)). And regardless of any other debate, there is no dispute that 1791 is when the Bill of Rights limited the Federal Government. Thus, in order to ensure uniformity of incorporated rights with respect to the Federal Government and the States, 1791 is the relevant time to "peg[] . . . the public understanding of the right." *Bruen*, 142 S. Ct. at 2137; *see also McDonald v. City of Chicago*, 561 U.S. 742, 765 (2010) (noting the Court's "decisive[]" holding "that incorporated Bill of Rights protections 'are all to be enforced against the States . . . according to the same standards that protect those personal rights against federal encroachment'" (quoting *Malloy*, 378 U.S. at 10)). [7]

In this matter, the Government is unable to establish its burden, as there are no historical analogues around the time of Founding or even through the 1800s or early

---

[7] As the extensive historical analysis of the Reconstruction period in *McDonald* shows, the evidence around Reconstruction is most relevant to determining *whether* a right has been incorporated, 561 U.S. at 777, while the content of that right is the public understanding in 1791.

5

1900s. It was not until 1938 – or 147 years after ratification of the Second Amendment [8] – with the passage of the Federal Firearm Act that dealers in firearms became subject to a licensing requirement. [9] The Gun Control Act of 1968 would later supersede the Federal Firearms Act and, subject to numerous amendments, is currently what still governs FFL licensing today. As discussed *supra*, the *Bruen* and *Heller* Courts assigned virtually no value to laws advanced by the government from the mid to late-19th-century that were not based on previously established laws. *See*, *Bruen* at 2154; *See*, *Heller* at 614. And the Third Circuit in *Range* explicitly declared "that a law passed in 1961—some 170 years after the Second Amendment's ratification and nearly a century after the Fourteenth Amendment's ratification—falls well short of 'longstanding' for purposes of demarcating the scope of a constitutional right." 2023 WL 3833404, at *6.

Thus, there is no national historical tradition of the regulation of the commercial sale of firearms present until the 1930's, *i.e. the 20th century*. In the absence of any such national historical tradition, § 923(a) and the violations thereof at § 922(a)(1)(A) and 924(a)(1)(D) are facially unconstitutional as violative of the Second Amendment.

I.     CONCLUSION

For the reasons described *supra*, Mr. King respectfully requests that this Honorable Court set aside the verdict and forfeiture or alternatively, reconsider his motion to dismiss.

---

[8] At least four generations would have come and gone, before the Federal Firearms Act was enacted. *See*, https://longevity.technology/news/usa-embrace-longevity-or-grow-old-fast (declaring that "[a]t the time of America's founding in 1776, the average newly-minted American citizen could expect to live to the ripe old age of 35…")

[9] The Fourth Circuit Court of Appeals in *U.S. v. Hosford* was only able to identify two states which had earlier regulations on firearms dealers, Hawaii (1927) and the District of Columbia (1932). 843 F.3d 161, 167 n. 1 (4th Cir. 2016).

                                                  Respectfully Submitted,

Date:   June 7, 2023

                                            /s/ Joshua Prince
Joshua Prince, Esq.
Attorney ID: 306521
Civil Rights Defense Firm, P.C.
646 Lenape Rd
Bechtelsville, PA 19505
888-202-9297
610-400-8439 (fax)
Joshua@civilrightsdefensefirm.com