Joshua Prince, Esquire
Attorney Id. 306521
Civil Rights Defense Firm, P.C.
646 Lenape Road
Bechtelsville, PA 19505
888-202-9297 ext 81114
610-400-8439
Joshua@CivilRightsDefenseFirm.com

UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| v. | : | No. 5:22-cr-00215-001 |
| | : | |
| REUBEN KING | : | |
| Defendant | : | |

**DEFENDANT REUBEN KING'S REPLY BRIEF IN SUPPORT OF HIS MOTION TO SET ASIDE THE VERDICT AND FORFEITURE OR ALTERNATIVELY, RENEWED MOTION TO DISMISS INDICTMENT**

As declared by Justice Thomas,

> Constitutional rights thus implicitly protect those closely related acts necessary to their exercise. There comes a point ... at which the regulation of action intimately and unavoidably connected with [a right] is a regulation of [the right] itself… Without protection for these closely related rights, the Second Amendment would be toothless. Likewise, the First Amendment right to speak would be largely ineffective if it did not include the right to engage in financial transactions that are the incidents of its exercise.

*Luis v. United States*, 578 U.S. 5, 26-27 (2016)(Thomas, J., concurring)(quotations and citations omitted).

And there can be no dispute that the Second Amendment protects closely related acts, incident to its exercise, such as the commercial sale of firearms, because without the ability for one to engage in the commercial sale of firearms, there would be no ability for one to purchase firearms and thus, would render the Second Amendment meaningless. In fact, the Third Circuit in *United States v. Marzzarella*, 614 F.3d 85, 92 fn. 8, (3d Cir.

2010) already declared that "the sale of firearms do not fall outside the scope of the Second Amendment" as it would otherwise foreclose the right to keep and bear arms. But while the Government contends the Third Circuit's statement is *dicta* (ECF 61, pg. 12), the Third Circuit has explicitly disagreed. In *Drummond v. Robinson Twp.*, 9 F.4th 217, 227 (3d Cir. 2021), the Third Circuit declared, citing to *Marzzarella*, that it "previously concluded that a categorical exception for rules 'prohibiting the commercial sale of firearms' would be 'untenable' in light of *Heller*…[and] [i]t is no surprise, then, that a search for historical parallels comes up short;" thereby, dispelling the Government's contention. What is perhaps the most interesting of the Government's response is that is wholly devoid of mention of the Third Circuit's precedent in *Drummond*, where the court addressed "[w]ether the restrictions on where citizens can purchase or practice with firearms implicated the right to keep and bear arms," and in finding that neither restriction "finds deep roots in history or tradition," declared Robinson Township's regulation of gun clubs and gun dealers to be unconstitutional. *Id*. at 222, 227.

Thus, there can be no dispute that pursuant to the Third Circuit's precedent, the commercial sale of firearms and the commercial provision of firearm proficiency implicate, and are therefore protected under, the Second Amendment. Resultantly, the burden, pursuant to *NYSRPA v. Bruen,* 142 S.Ct. 2111, 2126 (2022), is on the Government to establish that the regulation of the commercial sale of firearms is consistent with this Nation's historical tradition of firearms regulation. Unfortunately for the Government, the Third Circuit in *Drummond* already found the regulation of gun dealers to be *inconsistent* with our Nation's historical tradition of firearms regulation or stated otherwise "that a search for historical parallels comes up short." 9 F.4th at 227.

Even if, *arguendo*, one were to somehow interpret the Third Circuit's conclusions in *Marzzarella* and *Drummond* that "a categorical exception for rules 'prohibiting the commercial sale of firearms' would be 'untenable' in light of *Heller*," as requiring, for the precedent to be binding in relation to this matter, a categorical prohibition [1] on the sale of firearms as the Government seemingly contends (ECF No. 61, pgs. 12-13), *Marzzarella* and *Drummond* would still mandate that the verdict and forfeiture be set aside, as Mr. King has contended (ECF No. 21-1, pgs. 6, 10-11, 14, 15-16, 24-30), and the Government has never disputed and even acknowledged during trial, that he is a member of the Amish faith, who has closely held religious beliefs that preclude his picture from being taken, and given that 18 U.S.C. § 923(a) mandates, *without exception or discretion*, that an applicant for a federal firearm license "shall include a photograph," the Government has categorically prohibited him, and others of his faith and with the same closely held religious beliefs, from the commercial sale of firearms. [2]

---

[1] The Third Circuit's use of the language "categorical exception" is in relation to the barring of conduct as it relates to a particular person, group, entity, or class thereof and not just *in toto* for everyone and everywhere (*e.g.* a ban on the sale of firearms throughout the United States). This is reflected by the *Drummond* decision finding that Robinson Township's banning of home-based federal firearm licensees, but allowing for dealers in other zoning classes, was nevertheless violative of the Second Amendment. Stated slightly differently, just because Robinson Township permitted federal firearm licensees in zoning districts other than those residentially zoned, did not result in the constitutionality of the home-based regulation. Thus, as explained further *infra*, just because the Government permits individuals, who have no religious, moral, or ethical objection to the taking and submission of a photograph, to obtain a federal firearms license, does not result in the law being constitutional as applied to individuals who do have a religious, moral, or ethical objection to the taking of a photograph, as those people are categorically barred from obtaining the license.

[2] Moreover, as Mr. King previously raised (ECF No. 21-1, pgs. 28-30), the Government mandating that he either forego his First Amendment right to free exercise of religion by taking and submitting a photograph with an application for a federal firearms license or forego his Second Amendment right to engage in the commercial sale of firearms, is an

3

Furthermore, even if this Court were to ignore the holding by the Third Circuit in *Drummond* that "a search for historical parallels [of regulations regarding of gun dealers and ranges] comes up short," the Government (1) not only fails to address the arguments made by Mr. King (ECF No. 55-1, pgs. 3-4) that a single historical analogue around the time of Founding of a state is not a tradition but rather, it is a mere aberration or anomaly, with no followers [3] and that even two or three historical analogues of the states around the time of Founding are at best a trend and not a tradition,[4] especially when short-lived,[5] but also (2) fails to provide any analogous historical laws to the requirement of obtaining a license to sell firearms. In fact, the historical laws they proffer have *already* been held by the Third Circuit in *Drummond* to be *non*-analogous.

Specifically, the Government contends (ECF No. 61, pg. 16) that somehow a couple colonies, under British rule, banning the sale of firearms to specific groups (*e.g.* Native Americans and residents of another colony), in the early 1600's – almost a century and a half before the Revolutionary War, where the people realized the necessity of having the ability to take up arms against our overlords and thus, long before the enactment of our Constitution – is somehow analogous to the requiring of a license to sell

---

unconstitutional condition, as held by the U.S. Supreme Court in *Perry v. Sindermann*, 408 U.S. 592 (1972) and the legion of precedent.

[3] *See, D.C. v. Heller*, 554 U.S. at 632 ("[W]e would not stake our interpretation of the Second Amendment upon a single law ... that contradicts the overwhelming weight of other evidence.")

[4] *See, Ezell*, 651 F.3d at 706 (finding that two historical statutes "falls far short of establishing that [a regulated activity] is wholly outside the Second Amendment as it was understood" in 1791); *Illinois Ass'n of Firearms Retailers*, 961 F. Supp. 2d 928, 937 (N.D. Ill. 2014) ("[C]itation to a few isolated statutes—even to those from the appropriate time period—fall[s] far short of establishing that gun sales and transfers were historically unprotected by the Second Amendment") (internal quotation marks omitted).

[5] *See, Bruen*, 142 S. Ct. at 2155 ("[T]hese territorial restrictions deserve little weight because they were . . . short lived.")

firearms. As the Third Circuit declared in *Drummond* in addressing *this same argument*, "[w]hat defeats this analogy, however, is that historical rules kept weapons out of the hands of certain *buyers*, while the [gun dealer and range regulations at issue] aim to reduce *sellers*' commercial gain. Were we to conflate these distinct types of regulations, we would read the historical record more loosely than *Heller* allows." 9 F.4th at 228 (emphasis in original). In fact, not only does the Government fail to point to *any* analogous historical law regarding the licensing of individuals who desire to sell firearms, but their own examples are supportive of Mr. King's position, as those law reflect the ability of individuals to engage in the commercial sale of firearms *without a license*.

Thus, as there is no national historical tradition of the regulation of the commercial sale of firearms present until 1938 with the passage of the Federal Firearm Act, [6, 7, 8] 18 U.S.C. § 923(a) and the violations thereof at 18 U.S.C. §§ 922(a)(1)(A) and 924(a)(1)(D) are unconstitutional as violative of the Second Amendment.

I.     CONCLUSION

For the reasons set forth in his Brief in Support and *supra*, Mr. King respectfully requests that this Honorable Court set aside the verdict and forfeiture or alternatively, reconsider his motion to dismiss.

---

[6] Or, 147 years after ratification of the Second Amendment.

[7] The Fourth Circuit Court of Appeals in *U.S. v. Hosford* was only able to identify two states which had earlier regulations on firearms dealers, Hawaii (1927) and the District of Columbia (1932). 843 F.3d 161, 167 n. 1 (4th Cir. 2016).

[8] The Third Circuit in *Range v. Attorney Gen. United States of Am.*, 69 F.4th 96, 104 (3d Cir. 2023) explicitly declared "that a law passed in 1961—some 170 years after the Second Amendment's ratification and nearly a century after the Fourteenth Amendment's ratification—falls well short of 'longstanding' for purposes of demarcating the scope of a constitutional right."

                                                                  Respectfully Submitted,

Date:   July 24, 2023

                                                                   Joshua Prince, Esq.
                                                                   Attorney ID: 306521
                                                                   Civil Rights Defense Firm, P.C.
                                                                   646 Lenape Rd
                                                                   Bechtelsville, PA 19505
                                                                   888-202-9297
                                                                   610-400-8439 (fax)
                                                                   Joshua@civilrightsdefensefirm.com

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that a true and accurate copy of Defendant's Reply Brief in Support of his Motion to Set Aside Verdict and Forfeiture or Alternatively, Renewed Motion to Dismiss was filed electronically through the Eastern District of Pennsylvania Electronic Filing System. Notice of these filing will be sent by operation of the Court's Electronic Filing System to all registered users in this case.

Date:   July 24, 2023

Joshua Prince, Esq.
Attorney ID: 306521
Civil Rights Defense Firm, P.C.
646 Lenape Rd
Bechtelsville, PA 19505
888-202-9297
610-400-8439 (fax)
Joshua@civilrightsdefensefirm.com