UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA : | |
| : | |
| v.   : | No. 5:22-cr-00215-001 |
| : | |
| REUBEN KING, : | |
|       Defendant   : | |

**O P I N I O N**
Defendant's Motion to Set Aside Verdict, ECF No. 55 – Denied

**Joseph F. Leeson, Jr.**                                                                                  July 31, 2023
**United States District Judge**

I.      **INTRODUCTION**

Reuben King was charged by indictment with one count of dealing in firearms without a license in violation of Title 18, United States Code, Section 922(a)(1)(A). He motioned to dismiss the indictment, and the Court denied that motion. A jury found King guilty. Before the Court now is King's Motion to Set Aside Verdict or Alternatively, Renewed Motion to Dismiss Indictment. For the reasons below, and for the reasons in the Court's prior opinion, *see* ECF No. 24, the Court denies King's Motion.

II.      **BACKGROUND**

Between October 24, 2019 and March 16, 2020, King, a member of the Amish faith, sold five firearms to an undercover police officer on three separate occasions. The transactions took place in King's barn, where the undercover officer saw and filmed numerous firearms, which were arrayed on tables in the barn and marked with price tags.

King did not have a license to sell firearms commercially. As a result, the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF) served King with a cease-and-desist letter, warning him that his actions could be defined as dealing in firearms and that he should cease such

activity until obtaining a license as required by federal law. King did not obtain a license, nor did he attempt to obtain a license, but he did continue to sell firearms. After receiving the letter, King sold firearms to undercover officers during three separate transactions.

ATF agents later executed a search warrant at King's barn and recovered evidence of an ongoing business of selling guns, including the following: approximately 615 longarm firearms; approximately 10,000 rounds of ammunition; records and receipts for advertisements of guns placed in a local newspaper; and plastic bowls containing pre-marked price tags.

King was charged by indictment with one count of dealing in firearms without a license, in violation of Title 18, United States Code, Section 922(a)(1)(A) (the "Act"). ECF No. 1. He filed a motion to dismiss the indictment, arguing, in part, that the Act is unconstitutional. Specifically, he argued that the Act, which requires a license to deal in firearms commercially, violates his "Second Amendment right to engage in the commercial purchase and sale of firearms." ECF No. 21. The Court rejected that argument, stating,

> Even if the Court assumed that there is an implicit right in the Second Amendment to buy and sell firearms in order to keep and bear arms, that is not the same thing as a right to buy and sell firearms as a regular course of trade or business with the principal objective of livelihood and profit through the repetitive purchase and resale of firearms. In other words, the Second Amendment does not protect the commercial dealing of firearms. King cites to two cases to support his argument that his alleged conduct is protected by the Second Amendment, but both cases confirm that the government may regulate the commercial sale of firearms. *See D.C. v. Heller*, 554 U.S. 570, 626-27 (2008) ("nothing in our opinion should be taken to cast doubt on longstanding . . . laws imposing conditions and qualifications on the commercial sale of arms"); *see also United States v. Marzzarella*, 614 F.3d 85, 88 (3d Cir. 2010) (explaining that a regulation on "the commercial sale of firearms" is "presumptively valid").
>
> In sum, King is alleged to have violated the Gun Control Act by engaging in the commercial sale of firearms without a license. That conduct is not protected by the plain text of the Second Amendment. The Act does not stop King from keeping or bearing arms. The Act does not keep him from buying and selling firearms in order to maintain a private collection. Nor does the Act prohibit the commercial sale of firearms outright; it simply requires a license to do so. As a result, the Act does not violate the Second Amendment.

*United States v. King*, 2022 WL 17668454, at *3 (E.D. Pa. Dec 14, 2022).

King also argued that the Act was unconstitutional because it forced him to give up a protected right before he could receive a license to deal in firearms commercially: his right to exercise his religion under the First Amendment. ECF No. 21. As a practicing member of the Amish faith, King chooses not to have his photo taken for religious reasons. Applying for a license to deal in firearms, however, requires that an applicant submit a photograph. So, according to King, in order to obtain a license, he would have to betray his religious beliefs by being photographed. He argued therefore that forcing him to be photographed in order to sell firearms commercially was an "unconstitutional condition."

The Court rejected this argument because, among other reasons, King had never applied or sought a religious exemption from the photograph requirement. The Court stated,

> King never applied for a license under the Act. As a result, he was never officially denied a license for any reason, including for failing to submit a photograph. Because King never applied for a license under the Act, he cannot claim that he was denied the benefit of a license based on his refusal to submit to photographing.
>
> King cannot have been denied a benefit that he never applied for.

*King*, No. 5:22-CR-00215-001, 2022 WL 17668454, at *5.

King was tried before a jury and convicted. He then filed a Motion to Set Aside Verdict or Alternatively, Renewed Motion to Dismiss Indictment. ECF No. 55, Mot. The government opposes. ECF No. 61, Resp. King filed a reply to the government's Response. ECF No. 62, Reply.

### III. LEGAL STANDARDS

#### a. Rule 29—Review of Applicable Law

A convicted defendant may file a motion for acquittal under Rule 29 of the Federal Rules of Criminal Procedure. Such a motion "may only be granted where the evidence is insufficient to sustain the conviction." *United States v. Little*, 314 F. Supp. 3d 647, 652 (E.D. Pa. 2018). When adjudicating a Rule 29 Motion, courts ask whether the defendant's guilty verdict is supported by

substantial evidence. *Id*. Evidence is "substantial" when "a reasonable mind might accept [it] as adequate to support a conclusion." *Shuter v. Astrue*, 537 F. Supp. 2d 752, 755 (E.D. Pa. 2008). When determining whether evidence is substantial, courts "may not weigh the evidence," nor may they "make credibility determinations." *Little*, 314 F. Supp. 3d at 652. Courts must also "consider the evidence in the light most favorable to the government, draw all reasonable inferences in favor of the government, and presume that the jury properly evaluated credibility of witnesses, found the facts, and drew rational inferences." *Id*. (cleaned up). The government's burden is low. It may be met "entirely through circumstantial evidence." *Id*. Indeed, "the verdict must be upheld unless 'no reasonable juror could accept the evidence as sufficient to support the conclusion of the defendant's guilt beyond a doubt.'" *Id*. (*quoting United States v. Coleman*, 811 F.2d 804, 807 (3d Cir.1987)).

   b. ***Motion to Reconsider—Review of Applicable Law***

A motion to reconsider is used "to correct manifest errors of law or fact or to present newly discovered evidence." *Max's Seafood Café ex rel. Lou-Ann, Inc. v. Quinteros*, 176 F.3d 669, 677 (3d Cir. 1999) (quoting *Harsco Corp. v. Zlotnicki*, 779 F.2d 906, 909 (3d Cir. 1985)). Thus, a party seeking reconsideration must show at least one of the following: "(1) an intervening change in the controlling law; (2) the availability of new evidence that was not available when the court granted the motion; or (3) the need to correct a clear error of law or fact to prevent manifest injustice." *Id*. (citing *N. River. Ins. Co. v. CIGNA Reins. Co.*, 52 F.3d 1194, 1218 (3d Cir. 1995)).

IV.   **DISCUSSION**

According to King, he brings his Motion under Rule 29 of the Federal Rules of Criminal Procedure. However, he does not argue that the evidence presented at trial is insufficient to sustain the conviction. Any such argument would be without merit given the convincing and large amount of evidence admitted at trial against King. Instead, King argues that the verdict should be set aside for pure legal reasons, or in the alternative, that his original motion to dismiss the indictment should

have been granted. Thus, King's Motion is essentially a request to reconsider his original motion to dismiss the indictment.

King points to four errors that he believes this Court made in denying his initial motion to dismiss.

First, King argues that the Court erred when it "held that the Second Amendment does not cover the buying or selling of arms" because "the scope of the Second Amendment implicitly includes the ability to sell firearms." This argument can be dealt with summarily because it misconstrues the Court's true holding. The Court did not hold that the Second Amendment does not cover the buying and selling of firearms. Instead, the Court specifically pointed out that King was free to buy and sell firearms to maintain his private collection if he wanted. *King*, No. 5:22-CR-00215-001, 2022 WL 17668454, at *3. (explaining that the Act "does not keep [King] from buying and selling firearms"). The Court's actual holding was that the Second Amendment does not protect the *commercial* selling of firearms without a license. *Id*.

Second, King argues that the Court erred by not applying the analysis required by *Bruen*. King is again mistaken. In *Bruen*, the Supreme Court clarified the standard for applying the Second Amendment: "When the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct." *New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 142 S. Ct. 2111, 2129–30 (2022). If the Second Amendment's plain text covers certain conduct, then the government may regulate that conduct only by demonstrating that the regulation "is consistent with the Nation's historical tradition of firearm regulation." *Id*. at 2130. Contrary to King's argument, the Court did employ that analysis in its prior opinion. *See King*, No. 5:22-CR-00215-001, 2022 WL 17668454, at *3. It simply never discussed the second part of the analysis because King's conduct did not make it past the first part. In other words, the Second Amendment's

plain text does not cover the commercial sale of firearms. As a result, there is no need to discuss whether the Act is consistent with the Nation's historical tradition of firearm regulation.

Third, King attempts to revive his previously rejected "unconstitutional condition" argument. According to King, the Act categorically prohibits him and any other Amish member from selling firearms commercially because, in order to obtain a license, an applicant must include a photograph with their application. King again highlights the conundrum this requirement creates for him because of his religious beliefs against having his photograph taken. Although this argument has been repackaged, it suffers from the same deficiencies as before. Namely, King never applied for a license under the Act, nor did he seek a religious exemption from the photograph requirement. The Court has no way of knowing whether a request for an exemption would have been granted, and if he had been granted an exemption, whether King would have been denied a license for other reasons. King cannot refuse to apply for the privilege of a license to deal in firearms and then ask this Court to rule that the privilege was withheld from him unjustly. Even if he could make that argument, there is another fatal problem to such an argument the second time around; that is, King did not make this argument in his Motion. He raises it for the first time in his Reply to the government's Response. *See* Reply 3. He has therefore waived this argument. *See Gucciardi v. Bonide Prod., Inc.*, 28 F. Supp. 3d 383, 393 (E.D. Pa. 2014).

Fourth, and finally, King argues that the Court's prior opinion is a clear error of the law in light of a recent Third Circuit Court of Appeals decision: *Range v. Att'y Gen. United States of Am.*, 69 F.4th 96, 98 (3d Cir. 2023). The Court, however, fails to see what *Range* has to do with this case.

In *Range*, Bryan Range pleaded guilty in 1995 to making a false statement to obtain food stamps. *Id*. at 98. At the time he pleaded guilty, his conviction was considered a misdemeanor punishable by up to five years' imprisonment. *Id*. The conviction precluded him from possessing a firearm under Title 18 United States Code, Section 922(g)(1). *Id*. Range, however, desired to

possess a hunting rifle and a shotgun for home defense, so he sought a declaration that § 922(g)(1) violates the Second Amendment as applied to him. *Id*. at 99. The Third Circuit Court of Appeals applied the *Bruen* analysis and ruled in Range's favor.

The "threshold question" that the Third Circuit addressed in *Range* was whether Range was still considered "one of 'the people' who have Second Amendment rights" as that term is used in the Constitution. *Id*. at 101. The government argued that the Second Amendment did not apply to Range because the right to bear arms has historically extended only to law-abiding citizens. *Id*. at 101. The Third Circuit disagreed, holding that the term "the people" as used in the Constitution "'unambiguously refers to all members of the political community, not an unspecified subset.'" *Id*. (quoting *D.C. v. Heller*, 554 U.S. 570, 580 (2008)).

The Third Circuit next turned to the "easy question" of whether § 922(g)(1) regulated Second Amendment conduct. *Range*, 69 F.4th 96, 103. It held that it did: "Range's request—to possess a rifle to hunt and a shotgun to defend himself at home—tracks the constitutional right as defined by *Heller*." *Id*.

Having determined that Range's proposed conduct was protected by the Second Amendment, the Third Circuit then asked whether the government had carried its burden to justify stripping Range of that right. In order to justify § 922(g)(1), as it applied to Range, the government needed to show that the statute was "consistent with the Nation's historical tradition of firearm regulation." *Id*. (quoting *Bruen*, 142 S. Ct. at 2130). Ultimately, the Third Circuit determined that the government had not met its burden, because, in part, early law that prohibited convicted felons from possessing firearms applied only to violent criminals, and Range had not been convicted of a violent crime. *Range*, 69 F.4th 96, 103–04.

The Third Circuit emphasized that its decision in *Range* "is a narrow one." *Id*. at 106. *Range's* narrow holding does not help King. Although this case and *Range* both involve firearms and the Second Amendment, the similarities end there.

Unlike Range, who sought only to possess firearms, King sought to commercially deal in firearms. Indeed, King already possessed more than 600 firearms, and although that might seem excessive to some, his possession of a good-sized arsenal was not, by itself, unlawful. The unlawful part of King's conduct was dealing in firearms commercially without a license. Whereas Range merely wished to possess personal firearms, King wished to run a gun business without a license. *Range* simply does not alter Second Amendment jurisprudence when it comes to conditions and qualifications on the commercial sale of firearms, qualifications which have been around for a long time. *See, e.g., Heller*, 554 U.S. 570, 627 (2008) ("Although we do not undertake an exhaustive historical analysis today of the full scope of the Second Amendment, nothing in our opinion should be taken to cast doubt on longstanding . . . conditions and qualifications on the commercial sale of arms."). Range's proposed conduct was protected by the plain language of the Second Amendment, King's is not.

In sum, *Range* does not present an intervening change in the law since this Court denied King's original motion to dismiss the indictment. Moreover, King has not pointed out any clear error of law or fact in this case.

V.     **CONCLUSION**

King has not argued that the evidence in this case is insufficient to sustain his conviction. Moreover, the Court applied the correct standard in its prior opinion denying King's original motion to dismiss the indictment. The Third Circuit's *Range* decision is in harmony with the Court's prior opinion, too. For those reasons, those above, and those given in the Court's prior opinion, *see* ECF

No. 24, the Court denies King's Motion to Set Aside Verdict or Alternatively, Renewed Motion to Dismiss Indictment

A separate Order follows.

BY THE COURT:

*/s/ Joseph F. Leeson, Jr.*
JOSEPH F. LEESON, JR.
United States District Judge